[Crim. No. 4139.   Second Dist., Div. Three.   Dec. 5, 1947.]

THE PEOPLE, Respondent, v. REYES VALDEZ et al.,
Appellants.

Leola Buck Kellogg for Appellants.

Fred N. Howser, Attorney General, and John F. Hassler, Deputy Attorney General, for Respondent.

SHINN, Acting P. J.—Reyes Valdez and Lloyd Noriega were convicted in a nonjury trial of robbery while armed with a deadly weapon, and kidnapping for the purpose of robbery while armed with a deadly weapon; they were acquitted of grand theft of the property which was the subject of the robbery. Each defendant was charged with and admitted having been previously convicted of a felony and having served a term of imprisonment in the state prison. They appeal from the judgments and from orders denying their motions for a new trial.

The evidence introduced at the preliminary examination at which defendants testified fully was received at the trial and defendants introduced certain additional evidence, including brief testimony given by themselves. This procedure was adopted by stipulation, joined in by defendants and their attorney. Certain facts were established by the testimony of defendants and that of other witnesses. At about 2 p. m., November 18, 1946, one McLemore, a colored boy, was driving a truck loaded with 135 sacks of walnuts belonging to his employer, L. A. Nut House; when he stopped for a signal at Washington Street his truck was boarded by Noriega and another man, the truck with its load was taken to the plant of California Celery Growers, a wholesale produce firm composed of Pete Regas and John Abadjian. Before the arrival of the truck defendant Valdez had arranged with Regas for the sale of a load of walnuts to the firm; Regas was not present when the truck arrived but the walnuts were unloaded and stored; Valdez returned the following day and was paid for the walnuts, in cash, by Abadjian; the money, $2,650, according to Abadjian and Regas, and $1,350, according to Valdez, was divided between Valdez and Noriega. The evidence was conflicting as to whether others participated in the division. Noriega testified at the preliminary that he was alone when he entered the truck, that he asked McLemore for a ride, which was granted, that he proposed

to McLemore that the truck and load would be turned over to him, the walnuts would be sold, that McLemore would receive $200, and that McLemore agreed to the arrangement; that the truck was driven to Ninth and Alameda where Noriega telephoned to Valdez, asking him to arrange a sale of the walnuts, that Valdez asked him to call back in a few minutes which he did; that Valdez directed him to drive to California Celery Growers, that he did so, met Valdez there and the nuts were delivered. Valdez testified to the same effect. He was acquainted with Regas and Abadjian; Noriega was not. He testified that he did not participate in taking the walnuts or have any knowledge of the circumstances until Noriega asked him to arrange a sale of them, but understood that they were "hot" and told Regas they were. In short, Noriega admitted the theft of the walnuts but denied the robbery and kidnapping and Valdez denied all connection with the transaction except the receipt of the stolen property and its sale for $1,350. The testimony of defendants was contradicted by confessions which they made to police officers and by the testimony of other witnesses. McLemore testified that Noriega entered his truck from the left side, held a gun on him, an automatic, that another man entered and sat at McLemore's right, that he was told to keep his eyes closed and did so; that the truck was driven for a number of blocks when he was transferred to the rear seat of a coupe with Noriega and another man; that he heard the truck leave and heard one man refer to another as "papa"; that all the conversation was in Spanish which he did not understand, although threats were uttered which he did understand; that he was driven to another location where he was taken from the car, placed on a hard seat for some twenty minutes, replaced in the car and driven to a point near his home, where he arrived at about 5 p. m. He testified that he was threatened and in fear, that he kept his eyes closed as ordered; that his head was covered with a cloth while he was in the car, and that when he opened his eyes in being transferred to the car he looked only at Noriega. He denied that he consented to the theft or received any money. Regas testified that on the Thursday preceding the Monday when the crime was committed, Valdez negotiated with him for the sale of a load of walnuts, first asking $30 per hundred pounds; that he refused to pay that price; that Valdez came again the

following day asking the same price which was refused and that he returned on Monday when a price was agreed upon which totaled $2,650. It was the first purchase of walnuts the firm had made and the partners denied having had knowledge of the stolen character of the goods.

The People introduced, at the preliminary, written reports of confessions made to police officers by both defendants. Officer Neeley testified that while in custody Valdez made a statement to him and Officer Northrup; that he stated that he had known Noriega in San Quentin, had not seen him for a long time until about 10 days ago; that he at first denied all knowledge of the walnuts; that he was questioned further as to whether he was in on the "walnut highjack" and said that he was, with Noriega; that he, Valdez, drove the truck; that Noriega had a .25 automatic which he usually carried in his right hip pocket; that they drove the truck to a location where they had stationed a rented car; that he put his jacket over the colored boy's head, identifying a black leather jacket; that he took the truck to Regas' place and left the walnuts; that on the previous Friday he had had a conversation with Regas in which the latter said he could use "walnuts, beans or tires"; that he had no other deals with Regas; that he recalled that one of the fellows had called him "papa" as testified by McLemore, and that "the fellows" called him that. A written statement was introduced at the preliminary and at the trial which purports to be a report of a statement of Valdez before Officers McCreadie, Neeley and Northrup. It commences "Reyes Valdez stated" and contains a purported statement by Valdez to the effect that on the Friday before the robbery Noriega had come to his house and asked him to arrange a deal with "Pete" (Regas), that he contacted Regas who told him to "grab some walnuts," that he reported to Noriega who said he could not get them until Monday, which he, Valdez, reported to Regas, that "Noriega and the boys" delivered the walnuts, that he, Valdez, collected $2,350 the next day and gave all but $200 of it to Noriega; that Noriega had the rented "Chevy" which he had hijacked the truck with; that he, Valdez, took it back and exchanged it for a Mercury which he had when arrested. Another writing was likewise introduced at the preliminary and at the trial. It purports to be a question and answer statement of Valdez corresponding to the confession which

was testified to by Officer Neeley. At the preliminary Valdez testified that he had admitted to the officers that he had hijacked the truck but that he did so only because they had his two brothers there and were threatening to charge them with the offense. He also testified that he was a truck driver by occupation; that he had never hauled walnuts but had seen them purchased. At the trial Valdez denied having testified at the preliminary that he had hijacked the truck and denied having made any admission or confession to the officers.

We have made the foregoing statement of the evidence for the reason that counsel for Valdez, who did not represent him at the trial, contend here that the evidence was insufficient to establish his guilt of either offense. We hold it to be sufficient. In addition to the confessions, there was strong circumstantial evidence which tended to prove that Valdez participated actively in the commission of the crimes.

Testimony was given by Officer Neeley that Noriega also confessed, and a written statement was introduced at the preliminary which purported to be a report of the confession. In its main features it coincided with the testimony given by McLemore and it named one Navarro as Noriega's assistant in taking the truck and Valdez as the driver of the coupe. Noriega stated to the officers, as he testified, that he did not have a gun, but only a short piece of pipe which looked like one. It is not claimed on the appeal that the evidence was insufficient to establish his guilt.

It is claimed that the confessions were inadmissible against either defendant because they were not shown to have been made voluntarily. Counsel for appellants are unfamiliar with the record in this connection. Officer Neeley testified that each confession was made freely and voluntarily. He was not examined on *voir dire* or cross-examined on this point, and no objection was made to his testifying to the confessions. The writings which purported to be transcripts of the confessions were not identified as such at the preliminary but they were placed in evidence at the preliminary without objection, and at the trial by stipulation. The testimony of Valdez that he confessed to participation in the robbery only to shield his brothers presented only a conflict with the testimony of Officer Neeley as to the circumstances under which the confession was made. The trial court's

decision of this factual question rendered the confession admissible. Then, too, the officers' testimony given at the preliminary was received at the trial under the stipulation. There was no error in admitting evidence of the confessions.

A further contention of the defendants is that their constitutional rights were invaded by the use at the trial of the evidence received at the preliminary examination even though such evidence was used with their consent and that of their attorney. We disagree with this contention. The privilege of a defendant in a criminal action to confrontation by the witnesses against him in the presence of the court is not expressly secured by our Constitution, but it is guaranteed by subsection 3 of section 686 of our Penal Code subject to the limitations there stated. However, we may assume for present purposes in keeping with the like assumption of the United States Supreme Court in *Snyder* v. *Massachusetts*, 291 U.S. 97, 106 [54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575], that this privilege is protected by the due process provision found in section 13 of article I of our Constitution. This assumption poses the question as to the nature and scope of the assumed constitutional privilege. Wigmore states that the privilege in its primary and indispensable aspect is merely an application of the common-law rule against the admission of hearsay testimony, that is testimony, the accuracy of which has not been subjected to the test of cross-examination; while in its secondary and dispensable aspect it is simply a requirement established for the purpose of affording the trier of the facts a better basis for the evaluation of the worth of testimony by insuring the witness's presence before him when giving such testimony. (Wigmore, Evidence (3d ed. 1940), §§ 1362, 1365, 1395-1397; cf., 14 Am.Jur. pp. 888-889.) From this statement it may be deduced that the constitutional privilege is confined to the guaranty of an opportunity for the cross-examination of the witnesses against the defendant and does not include the observation of the witness's demeanor by the trier of the facts. This deduction is borne out by the aforementioned subsection 3 of section 686 of our Penal Code which permits the use of testimony adverse to the defendant taken on preliminary examination or by deposition and of testimony generally given at a trial, where in each of the three situations the witness giving such testimony in the presence of the defendant is shown to be at the time of the trial dead

or insane or "cannot with due diligence be found within the state," provided the defendant in person or by counsel has cross-examined the witness or had an opportunity to do so. In other words subsection 3 allows the use at the trial of prior testimony adverse to the defendant where the witness who gave it is unavailable at the trial for the reasons stated and the defendant has had a prior opportunity for the cross-examination of such witness. The existence of this statutory limitation upon the assumed constitutional privilege demonstrates that the privilege is restricted to the opportunity of cross-examination. Similarly, the California decisions recognize the opportunity for cross-examination as constituting the whole of the assumed privilege. (*People* v. *O'Neill*, 78 Cal.App.2d 888, 891 [179 P.2d 10]; *People* v. *Schwarz*, 78 Cal.App. 561, 579 [248 P. 990].) In fact, on this basis, without reference to whether confrontation is a part of due process, subsection 3 had been repeatedly held constitutional. (*People* v. *Hermes*, 73 Cal.App.2d 947, 955 [168 P.2d 44]; *People* v. *Bernstein*, 70 Cal.App.2d 462, 469 [161 P.2d 381]; *People* v. *Clark*, 151 Cal. 200, 204 [90 P. 549]; *People* v. *Sierp*, 116 Cal. 249, 252 [48 P. 88].) It follows that once the assumed constitutional privilege of cross-examination has been granted, the remaining statutory requirements of subsection 3 may be waived by a defendant. This right of waiver has been recognized both here in California (*People* v. *Hanna*, 36 Cal.App.2d 333, 336-337 [97 P.2d 847; *People* v. *Brown*, 83 Cal.App. 236, 238-239 [256 P. 569]; *People* v. *Bird*, 132 Cal. 261, 264 [64 P. 259]), and elsewhere. (Wigmore, *op. cit.*, § 1399; 23 C.J.S. p. 376; 14 Am.Jur. p. 897.) To the extent that the statutory safeguards of subsection 3 extend beyond the assumed constitutional privilege of opportunity for cross-examination, they are intended solely for the private benefit of defendants, and consequently may be waived by them. (Civ. Code, § 3513.) They were effectually waived by defendants and their claim that their rights were invaded is without merit.

The criticism leveled at the practice of trying felony cases by stipulation upon the transcript of the evidence taken upon the preliminary examination is scarcely applicable to the facts of the present case. Each defendant testified to having participated in a criminal activity; the only questions were as to the extent of the participation by each. They testified at the trial but made no effort to present anything

in the way of a defense which was not presented at the preliminary. Defendants had competent representation. It was made clear to them how their case was to be tried and they added their express consent to that of their attorney. It does not appear that they suffered any disadvantage in waiving the right to be again confronted by the witnesses who had testified against them.

The judgments were not uncertain or defective for the reason that the sentences were made to run concurrently with any sentences which might be imposed for violation of parole.

The judgments and orders denying motions of defendants for new trials are affirmed.

Wood, J., and Vallée, J. pro tem., concurred.

A petition for a rehearing was denied December 17, 1947, and appellants' petition for a hearing by the Supreme Court was denied December 31, 1947.