[Crim. No. 7141. Second Dist., Div. Three. Mar. 24, 1961.]

THE PEOPLE, Respondent, v. RUDY JOHN ENRIQUEZ et al., Appellants.

Bernard W. Minsky, under appointment by the District Court of Appeal, for Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Respondent.

SHINN, P. J.—Appellants were accused by information of murder in violation of section 187 of the Penal Code, and of kidnaping with intent to commit robbery in violation of section 209 of the Penal Code. Appellants pleaded not guilty. After a trial by jury, appellants were found guilty as charged in the information with a finding of murder in the first degree and that the person subjected to the kidnaping suffered bodily harm. The jury fixed the penalty for the commission of murder at life imprisonment and for kidnaping at life imprisonment without possibility of parole. Appellant Enriquez was charged with three prior felonies, which he admitted. The appeals are from the judgments of conviction and the order denying motions for a new trial.

On September 15, 1956, Chris Blake and his wife were in their grocery store located at 15th and Junipera in Long Beach. At about 4 p. m. Mr. Blake had just finished stacking beer in the beer case and had just started to turn around when he was struck across the throat by a long-barreled gun. At that moment he saw two men to the left and a little to the rear of him. The men were Spanish, and one was larger than the other. The smaller man was the one that had struck him. Both men placed their hands on his back and shoulders and started to shove him along the meat case. They said "get going" or "get into the back room" or something similar to that. They moved him approximately 6 feet. He testified that the blow on his throat caused him to bleed and suffer pain.

Mrs. Blake, who was in the back room, on hearing a moan, stepped out and saw her husband, with blood on his throat, being held by a man. This man saw her and immediately

came over to her and stuck the gun against her body. He asked her for the money, and she directed him to the cash register. He went behind the checkstand and then he ran from the checkstand toward the front door. Mildred Ellison was standing by the front door inside the store. The shorter man looked up at her, fatally shot her, and then called to his companion to get out. The two men ran out, got into a car and drove away. This car was identified by a person across the street and the license number and make of the car were immediately phoned to the police. The car was found about four blocks from the grocery store with the front door open and the gears jammed. The car was stolen and wired so as to be driven without an ignition key.

Three years after the crime the appellants were arrested. Mr. and Mrs. Blake testified that the smaller of the two men, Enriquez, was the one who struck Mr. Blake. Solorzano was positively identified by Mr. Blake; he did not get a good look at the smaller man, Enriquez, before he was struck, and testified only that Enriquez looked familiar to him. Mrs. Blake was positive in her identification of Enriquez as the man who struck her husband and shot and killed Mrs. Ellison. The car that was used in the escape of the men had been stolen from San Pedro during the Fishermen's Fiesta. It was examined for fingerprints and 17 of those found matched the fingerprints of Solorzano.

Appellant Solorzano's defense was an alibi. He testified that in the afternoon of September 15, 1956, he had been invited to the car in question by a friend named Gomez, since deceased, and had sat in the car about 15 minutes while he drank a can of beer. His defense was an alibi, in which he was corroborated by his sister. Appellant Enriquez could not remember where he was on the day of the crime. Both denied ever having been in the Blakes' store. They were well acquainted with each other and had worked together in the same places.

The first contention is that it was prejudicial error to permit evidence to be introduced of admissions of appellants to the police that they were narcotics addicts and to elicit in the cross-examination of Enriquez, over objection, the fact that he had used narcotics.

In July 1959, Enriquez was in San Quentin Prison where he had been for about two and one-half years. He was interviewed at length by Detective Inspector Thiele of the Long Beach Police Department. We shall first refer only to that

portion of the interview which has to do with evidence of the admission of Enriquez that he was a narcotics user. He was asked by Inspector Thiele whether he was using narcotics on September 15, 1956, the date the crimes were committed, and he answered that he was a narcotics user and believed he was using narcotics at that time. Solorzano was apprehended about July 1, 1959. He was brought to the office of the district attorney in Long Beach by Los Angeles authorities and was interviewed by Inspector Thiele and Mr. Compton, a deputy district attorney. He was asked whether he was a narcotics user and answered that he was and believed that about the time the crime was committed he was "hooked." This entire line of questioning was objected to on behalf of both appellants and the objections were overruled. The ruling was clearly erroneous.

The People seek to justify admission of the evidence of the other crime, the use of narcotics, upon two theories: (1) that it was a part of the res gestae, illustrating appellants' motive; (2) that it was relevant as affecting the credibility of appellants' testimony. Neither theory is sustainable.

Evidence that an accused has been guilty of another crime, not associated in any way with the offense for which he is on trial, and which does not tend at all, or only to a relatively insignificant degree, to prove his guilt of the charge on trial is inadmissible. (*People* v. *Glass,* 158 Cal. 650 [112 P. 281]; *People* v. *Albertson,* 23 Cal.2d 550, 576 [145 P.2d 7]; *People* v. *Estrella,* 116 Cal.App.2d 713 [254 P.2d 182].)

There was no connection whatever between the appellants' addiction to narcotics and commission of the offenses charged. The evidence of addiction was not adduced in making proof of those charges. It was not admissible as evidence of a motive for the offenses, which was conclusively shown by the attempted robbery. (See *People* v. *Guiterrez,* 152 Cal.App.2d 115 [312 P.2d 291].)

The People now urge, as they did at the trial, that the evidence of addiction was admissible as impeachment of the credibility of the appellants. This contention scarcely deserves attention. At the time the admissions of appellants that they were addicts were placed in evidence neither appellant had testified. The People knew that Enriquez had admitted conviction of three felonies and that if he should testify that fact would be developed in his cross-examination, by way of impeachment, as was the case. Again, specific acts of misconduct or guilt of penal offenses, except convictions of

felonies, may not be proved for the purpose of impeachment. (Code Civ. Proc., § 2051.)

The purpose of the People must have been to furnish a basis for their contention that the appellants were generally disposed to the commission of crimes. This was not a legitimate purpose. (See cases *supra.*)

Instead of attempting to justify the error by lengthy argument in their brief the People would have done well to admit the error and rely upon their further contention that the ruling was not prejudicial to any harmful degree. Enriquez, in his cross-examination, admitted that he had served terms in state prison following his conviction for possession of narcotics and for grand theft. His admissions of addiction to narcotics tended to degrade him, and could have influenced the jurors to believe that he was disposed to the commission of crimes, but it could not have prejudiced them against him to any greater extent than would have his admission that he had been convicted of possession of narcotics. As to Enriquez, the error was insignificant.

When Enriquez was interrogated by Inspector Thiele in San Quentin he made a number of equivocal statements. When told about the shooting he asked ''Did she die—did the woman die?'' When asked what became of the gun he said ''If I told you about that, you would have a big point.'' When questioned as to what had occurred in the Blake store, he asked ''If I do tell you, what will I get out of it?'' Although he denied having committed the crimes, he repeatedly said that if he was returned to Long Beach, he would make ''a clean breast'' of the matter to Mr. Compton, the deputy district attorney. However, in the presence of Mr. Compton and others he refused to discuss the matter.

Although it was error to receive evidence of Solorzano's admission of addiction to narcotics, a reversal of the judgment as to him would not be justified. His guilt was established beyond the slightest doubt by his identification by Mr. Blake and by his fingerprints which he left upon the car, 13 of which were upon the steering wheel, three upon the inside left front door handle and a palm print on the left rear door handle of the car. Although he testified that he had been invited into the car by one Gomez, previously deceased, the evidence was that of the fingerprints that were found none matched the fingerprints of Gomez. Moreover, both appellants had been in San Pedro during the Fishermen's Fiesta, at which time the car had been stolen. Although Solorzano had

stated to the officers that he was on a freighter as a member of the crew on the day the crimes were committed, it was proved that the ship did not depart until the following day.

■ Appellants specify several particulars in which it is claimed the deputy district attorney in argument was guilty of prejudicial misconduct. The principal assignment relates to the deputy's stating he would stake his life that Mr. and Mrs. Blake would not have identified the defendants if they had been at all uncertain in their identification. It is also complained that the deputy stated that he knew defense counsel pretty well and that he was making "a complete tongue in cheek approach" to this case. We are of the opinion that the arguments of the prosecutor to the jury were generally very fair to the defendants and that the statements that are criticized could not have been harmful to any appreciable extent. Moreover, they were not objected to.

■ Appellants strongly urge insufficiency of the evidence to prove acts constituting kidnaping. The evidence was that the appellants shoved Mr. Blake about 6 feet toward the checkstand and cash register, at the same time threatening him with a gun. It is earnestly contended that moving Mr. Blake for that distance was not an act of kidnaping or carrying away within the meaning of section 209 of the Penal Code. Under the adjudicated cases this contention is unsustainable. In *People* v. *Chessman*, 38 Cal.2d 166 [238 P.2d 1001], defendant had transported one of his victims for a considerable distance in his car and another one from a car in which she was seated to defendant's car. ■ The court said (p. 192) : "The fact that Regina in being kidnaped or carried away was forced to move only 22 feet does not make her abduction any the less kidnaping within the meaning of the statute. . . . It is the fact, not the distance, of forcible removal which constitutes kidnaping in this state." In *People* v. *Wein*, 50 Cal.2d 383 [326 P.2d 457], where multiple offenses were proved, it was contended that none of the victims had been moved far enough for it to be said that they were kidnaped or carried away. The court said (p. 400) : "Here, the testimony of some of the victims fixed the amounts of movement at distances ranging from a few feet up to more than 50 feet. Under the reasoning and language of the Chessman case, any of these distances sufficed for a conviction under the challenged section. This conduct went beyond a mere detention during the course of an armed robbery, which is no longer punishable by death. (See *People* v. *Taylor*, 135 Cal.App.2d 201 [286 P.2d 952].)

To the extent that defendant's argument is predicated on legislative intent, it must be noted that the Legislature has been in session several times since the Chessman case was decided, and it has not seen fit to amend the kidnaping law to limit the rule we announced. If the section, as interpreted by this court, is regarded as too harsh, the remedy is for the Legislature to redefine kidnaping, and not for this court to engraft some uncertain distance limitation onto the plain language of the section." The distances which the victims were forced to move are shown in the dissenting opinion of Mr. Justice Carter. These were 2 or 3 feet, 3 or 4 feet, 4 or 5 feet, 12 feet, 5 feet, 75 feet and from one room into another.

We consider ourselves to be bound by the decisions of the Supreme Court to the effect that it is the fact, not the distance, of forcible removal which constitutes kidnaping. As stated in the Wein case, if section 209 as interpreted by the Supreme Court, is regarded as too harsh, "the remedy is for the Legislature to redefine kidnaping, and not for this court to engraft some uncertain distance limitation onto the plain language of the section."

In passing, it may be noted that the forcible shoving of Mr. Blake was not merely a movement 6 feet from one place to another without purpose; the movement was toward the cash register, and it was fairly inferable that the purpose was to force Mr. Blake to open and take money from the cash register, or for the defendants to take it themselves while he was covered with a gun. It could be said that it was an essential step in the attempted robbery.

The court instructed as follows: "To constitute the crime of kidnaping for the purpose of Robbery as charged in count II of the information there must be a carrying, or continuous forcible moving, for some distance of the person, who against his will, is stolen or taken into the custody or control of another person, but the law does not require that the one thus stolen or taken be carried or moved a long distance or any particular distance." We must consider this instruction in light of the fact that the uncontradicted evidence was that Mr. Blake was forcibly moved for about 6 feet. The appellants argue that the jurors could have understood the instruction to mean that since kidnaping did not require the movement of the victim any appreciable distance, mere detention of the victim would constitute the offense. It is not conceivable to us that the instruction would have been so misunderstood, and since it stated the law as it has been declared by the

Supreme Court, it was a proper instruction for the court to give.

The judgments and order denying motions for new trial are affirmed.

Vallée, J., and Ford, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 16, 1961.