[Crim. No. 8922.   Second Dist., Div. Four.   Feb. 19, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. ANTHONY FRANK ZURICA et al., Defendants and Appellants.

Morris Lavine and Howard Meyerson for Defendants and Appellants.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—This is an appeal from judgments of conviction and sentence for robbery and kidnaping for the purpose of robbery.

In two separate informations nine counts were alleged charging defendants Zurica, Rizzitello and Castiglione with robbery and kidnaping for the purpose of robbery. The informations were subsequently consolidated and tried before a single jury. Zurica was found guilty of one count of robbery and three counts of kidnaping for the purpose of robbery (Counts IV through VII of the consolidated information). The robbery offense (Count IV) was found to be in the first degree. Castiglione and Rizzitello were each found guilty of three counts of robbery and three counts of kidnaping for purpose of robbery (Counts IV through IX). The robbery counts (Counts IV, VIII and IX) were also found to be robbery in the first degree.

Motions for new trial and probation were denied as to each defendant. The court on its own motion dismissed one count as to each defendant of kidnaping for the purpose of robbery (Count V), and each was sentenced to the state prison for

the term prescribed by law, sentences on counts to run concurrently with one another.

The convictions stemmed from offenses which allegedly occurred at two cocktail bars located in the city of Los Angeles —the Fog Cutters bar and the Losers Club. Only defendants Castiglione and Rizzitello were involved in the Fog Cutters incident, from which both sustained convictions for robbery as alleged in Counts VIII and IX of the consolidated information.

The evidence as to these counts shows that, on June 21, 1961, at approximately 1:30 a.m., Castiglione and Rizzitello entered the bar at the Fog Cutters restaurant. After having a drink, each produced a gun and demanded money. Francis Mullin, a bartender, Bruce Guerin, a piano player, and a waitress, Dolly Black, were the only persons in the bar at the time. Mullin was forced to turn over approximately $600 in bills which he took from the cash register (the robbery charged in Count VIII). A money clip valued at $600, with an undetermined amount of money in it, was taken from Guerin (Count IX).

All three defendants were charged with and convicted of robbery and kidnaping for the purpose of robbery (Counts IV through VII), for their participation in a holdup at the Losers Club bar. Because defendants challenge the sufficiency of the evidence to support their convictions of these charges (Counts IV through VII), a summary of the evidence is called for.

Don Holland (since deceased), an entertainer and musician at the Losers Club, was standing outside the front door of the club near its closing time at about 2 a.m., on April 17, 1962. With him were Stanford Orling, the owner of the club, and Charles Stapleton, the parking lot attendant. Defendant Rizzitello came up behind them, "stuck a gun in the back of our heads," and ordered them to go back inside the club. After they were inside Rizzitello put them against a wall, then made them lie face down on the floor. Rizzitello asked for the manager, and, when Orling responded, escorted the latter to his office. There were two other persons with Rizzitello. Holland recognized one of them to be defendant Castiglione. When they returned from Orling's office everyone was told not to move for 15 minutes; that if they put their heads out of the door "we will blow your heads off."

Stapleton recalled that on April 17, 1962, he was standing in front of the club with Orling and Holland, just prior to

its closing, when defendant Zurica flashed a gun and asked them to go inside, saying, they were "going to have a party." The gun appeared to be a Luger automatic. They, along with about 15 other persons, who were in the bar at the time, were told to lie on the floor. Stapleton heard someone ask for the manager and saw Orling go into his office with another person. Thereafter, someone came out of the office and said they were to lie on the floor for five minutes and were not to call the police.

Orling recalled standing in front of his club in the company of Holland and Stapleton when someone came up from behind him and said it was a holdup. He did not see the person but only the barrel of the gun the person was holding. After being made to lie on the floor someone asked for the manager. This person asked if there was a safe. Orling replied that there was a safe in his office. A man resembling defendant Rizzitello stood near the doorway to his office. The man had a gun in his hand resembling a German Luger. While Orling opened the safe the man resembling Rizzitello stood behind him, gun in hand. Orling turned over between approximately $150 to $200 to this man. Orling recalled that in size the man was as large or larger than he. Orling was 6 feet, 1 inch in height.

Ralph Anderson, a taxicab driver, went to the Losers Club at about five minutes to 2 a.m. April 17, 1962, for the purpose of picking up a fare. After he entered the place a man whom he was not able to recognize touched him on the arm and told him to lie on the floor. The man carried a gun which resembled an Army .45. The man was about 2 or 3 inches shorter than Anderson who was 5 feet, 10 inches. (Zurica, by his own testimony was 5 feet, 6½ inches in height; Rizzitello was about 6 feet, and Castiglione 5 feet, 9 ½ inches.)

Defendants Rizzitello and Castiglione were arrested on April 30, 1962. On the evening of April 30, Orling had spotted Rizzitello in the Losers Club and, when he left, Orling's partner called the police. At approximately 10:45 p.m. the same evening Officer Caracilo had observed Castiglione driving an automobile in which Rizzitello and another person were seated. The car was stopped and a search of it disclosed a loaded .32-caliber revolver in the glove compartment. Rizzitello stated that the automobile was his but that it was registered to his wife. He denied, however, that the gun was his. At the police station he again denied that he owned the gun, saying that he knew nothing about it; that he had his car

worked on in a gas station and "may be that is how it got in."

Defendants each took the stand and denied committing any of the offenses or being in the establishments at the time of the offenses. A defense witness testified that he was at the Losers Club when it was robbed. He had a "fair look at the three" participants and defendants were "not the ones."

In contending that the evidence is insufficient to support the judgments on Counts IV through VII, defendants point to apparent inconsistencies in identification by the prosecution witnesses. ▆ The rule however is clear that the strength or weakness of an identification, any incompatibility of or discrepancies in testimony, or uncertainties of witnesses in giving their testimony, are matters solely in the first instance for the jury, and for the trial court on a motion for new trial; that unless it can be said as a matter of law there was no evidence to support a conviction we may not disturb the judgment. (*People* v. *Shaheen*, 120 Cal.App.2d 629, 636-637 [261 P.2d 752].) ▆ And, that portion of a witness' testimony which supports the judgment must be accepted, not that portion which would tend to defeat it. (*People* v. *Thomas*, 103 Cal.App.2d 669, 672 [229 P.2d 836].)

▆ In the instant case the jury might reasonably have found that under the stress of events different victims at the Losers Club perceived and retained different impressions of the participants in the crimes and of their roles, but the jury nevertheless may still have concluded that all three defendants were involved. We conclude that there was ample evidence to support the jury's verdicts.

▆ Defendants contend that the trial court abused its discretion in consolidating cases for trial with different transactions and defendants involved in the various counts. The record reflects the absence of any objection either at the time the cases were consolidated for trial or thereafter on the day of trial when a motion by the People to consolidate was granted.[1] It is well established that defendants may not object for the first time on appeal to a misjoinder of counts or consolidation of cases. (*People* v. *Sourisseau*, 62 Cal.App.2d 917, 926 [145 P.2d 916]; *People* v. *Kemp*, 55 Cal.2d 458, 474 [11 Cal.Rptr. 361, 359 P.2d 913].) ▆ Moreover, defendants have failed to show wherein they were prejudiced by the

---

[1]Case No. 260553 charged seven counts and case No. 259244 two counts. Count I of case No. 259244 became Count VIII of the consolidated information and Count II became Count IX.

consolidation. "A bald assertion of prejudice is not enough. [Citations.]" (*People* v. *Kemp, supra,* 55 Cal.2d 458, 447, and quoted in *People* v. *Pike,* 58 Cal.2d 70, 85 [22 Cal.Rptr. 664, 372 P.2d 656].)

Defendants contend the trial court erred in imposing multiple punishments. It is asserted that defendants should not be punished both for the robbery at the Losers Club and for kidnaping for the purpose of robbery with respect to victims Holland and Stapleton. (As to victim Orling, defendants were sentenced on the robbery count and the kidnaping count was dismissed.) Since nothing was taken from either Holland or Stapleton, it is argued that the only finding that could reasonably be made would be that the alleged kidnaping was a part of a single course of criminal conduct, namely, the consummation of the robbery at the Losers Club, and that, at the most, defendants should be punished only for robbery.

Defendants cite Penal Code section 654 providing that a defendant may not be punished for a single act under more than one provision of the code. This section, however, is not applicable to the facts in the instant case. Section 654 does not apply where a single act has two results, each of which is an act of violence against the person of a separate individual. (*Neal* v. *State of California,* 55 Cal.2d 11, 20-21 [9 Cal.Rptr. 607, 357 P.2d 839].) Penal Code section 209, which prescribes the offense of kidnaping for the purpose of robbery does not require that the robbery and kidnaping must relate to the same person. (*People* v. *Baldwin,* 191 Cal.App.2d 83, 86 [12 Cal.Rptr. 365].) Nor does the fact that no property was taken from the victims of the kidnaping preclude defendants' conviction for violation of section 209. (*People* v. *O'Farrell,* 161 Cal.App.2d 13 [325 P.2d 1002].) In the instant case the kidnaping of Holland and Stapleton facilitated the robbery of Orling in that it prevented them from spreading an alarm. Furthermore, a separate offense is deemed committed against each of the kidnaping victims. "[T]hough two victims respond to the same force, such as being ordered about at gun point, and are simultaneously subjected to the same indignities, there are nevertheless two kidnaping offenses. [Citation.]" (*People* v. *O'Farrell, supra,* 161 Cal.App.2d 13, 21.)

Defendants argue that this was not "true kidnaping," as where the defendant "kidnaps or carries away the victim." The evidence however clearly demonstrates

that the victims were compelled to move a definite distance. Accordingly, they were kidnaped, for it is the fact, not the distance of forcible removal, which constitutes the crime of kidnaping. (*People* v. *Enriquez,* 190 Cal.App.2d 481, 488 [11 Cal.Rptr. 889].)

Defendants Rizzitello and Castiglione contend that the court erred in allowing the reading of the testimony given at the preliminary hearing of a witness for the prosecution (Mr. Holland), who, it was stipulated, was deceased at the time of trial. It is asserted that it was a denial of due process to permit the reading of this testimony into the trial without the right of cross-examination at the trial; that it gave the jury no opportunity to observe the witness' demeanor. In effect, defendants concede that the requirements of Penal Code section 686, subdivision 3, which allows such procedure, have been met in this case. Defendants argue, however, that this section, as applied in this case, is unconstitutional.

The scope to be accorded the privilege of confrontation as it relates to section 686, subdivision 3, was discussed in the case of *People* v. *Valdez,* 82 Cal.App.2d 744, 749-750 [187 P.2d 74]. The court stated: "... that the constitutional privilege is confined to the guaranty of an opportunity for the cross-examination of the witnesses against the defendant and does not include the observation of the witness's demeanor by the trier of the facts. This deduction is borne out by the aforementioned subsection 3 of section 686 of our Penal Code which permits the use of testimony adverse to the defendant taken on preliminary examination or by deposition and of testimony generally given at a trial, where in each of the three situations the witness giving such testimony in the presence of the defendant is shown to be at the time of the trial dead or insane or 'cannot with due diligence be found within the state,' provided the defendant in person or by counsel has cross-examined the witness or had an opportunity to do so." (82 Cal.App.2d 744, 749-750.) The constitutionality of Penal Code section 686, subdivision 3, is well established. (*People* v. *Terry,* 180 Cal.App.2d 48, 52-53 [4 Cal. Rptr. 597].)

Zurica contends that an instruction on circumstantial evidence should have been given. It is maintained that the victim Stapleton's testimony against Zurica was circumstantial evidence as to Rizzitello, in that Stapleton identified only Zurica and not the others involved; that the converse

applies as to the testimony of victim Holland, in that Holland did not identify Zurica, but identified Rizzitello. This contention is without merit. Instructions on circumstantial evidence are not required when such evidence is merely incidental to and corroborative of direct evidence. (*People* v. *Malbrough*, 55 Cal.2d 249, 250-251 [10 Cal.Rptr. 632, 359 P.2d 30]; *People* v. *Gould*, 54 Cal.2d 621, 629 [7 Cal.Rptr. 273, 354 P.2d 865].) The conviction of each defendant in this case did not depend upon inferences drawn from a pattern of circumstances but rather the credibility to be given the testimony of eyewitnesses, directly implicating each defendant. The trial court therefore properly omitted the instructions.

Defendants Rizzitello and Castiglione contend that they were prejudiced by the failure of the court to give the full admonition to the jury at each recess as required by section 1122 of the Penal Code, namely, not to converse among themselves or with anyone else on any subject connected with the trial or to form or express any opinion thereon until the matter is finally submitted to them. The record discloses that during the early part of the trial the jurors were admonished substantially in accordance with section 1122 on five separate occasions. Thereafter, when the next recess was called, the court asked the jurors to heed the usual admonition. All counsel stipulated at the time that the court need not give the admonition in full. Thereafter, the court asked the jurors "to heed the usual admonition" or "to heed the usual admonition as to talking about the case or forming any opinion." This was entirely proper. (*People* v. *Linden*, 52 Cal.2d 1, 29 [338 P.2d 397].)

Defendants Rizzitello and Castiglione maintain that the court improperly instructed the jury with reference to the question of criminal intent and erred in refusing to give an instruction on aiding and abetting.

With reference to the instruction on intent, the court instructed the jury to the effect that there need not exist an intent to violate the law or to do a wrong, to constitute criminal intent; that such intent exists when a person intentionally does that which the law declares to be a crime, though he may not know that he is committing a crime or that his act is wrong. Defendants argue that this instruction is akin to the instruction given in *People* v. *Snyder*, 15 Cal. 2d 706, 708-710 [104 P.2d 639], wherein the trial court instructed the jury that a person is presumed to do that which he voluntarily does do, and is presumed to intend the natural

or probable consequences of his acts. The appellate court reversed the judgment in that case, indicating that, although the jurors were instructed on specific intent, they might have based a finding of such intent on a presumption. The instruction given by the court in the case at hand more closely resembled that given in *People* v. *Zerillo,* 36 Cal.2d 222 [223 P.2d 223], than in *Snyder, supra,* and was not such as to permit the jurors to base a finding of specific intent on a presumption of law as was condemned in the *Snyder* case. In any event, since the record reflects that it was defendants Rizzitello and Castiglione who requested this instruction, they are not in a position to now complain. (*People* v. *Williams,* 128 Cal.App.2d 458, 463 [275 P.2d 513].

The jury in the instant case was instructed relative to the question of the intent required for the crimes charged that an essential element of the crime of kidnaping for the purpose of robbery was a specific intent to commit the crime of robbery. While no separate instruction was given on the specific intent required for the crime of robbery, that is, the intent to steal, the jury was given the statutory definition of robbery. (Pen. Code, § 211.) Although such instruction should have been given we do not find that the failure to give it constituted prejudicial error. The defense was that these defendants were not the persons who committed the crimes at the Losers Club. No contention was made at the trial that the robbers, whoever they were, did not intend to commit theft, that they were too intoxicated to form an intent, that they acted under some mistake of fact or law, or any of the other usual defenses which raise issues of intent. In light of the record, no different result was probable had the jury been given this instruction. (*People* v. *Quinn,* 77 Cal.App.2d 734, 738-739 [176 P.2d 404] ; *People* v. *Seay,* 179 Cal.App.2d 362-363 [3 Cal.Rptr. 769].)

Nor do we believe defendants were prejudiced by the trial court's failure to give an instruction on the definition of aiding and abetting which was requested by the People. The jury was instructed pursuant to Penal Code section 31 in pertinent part and was also given special instruction in which examples of aiding and abetting were given. While such an instruction might have been appropriate under the circumstances, in the light of the evidence, consisting largely of eyewitness testimony directly incriminating defendants, no prejudice in the failure to give this instruction is demonstrated. (*People* v. *Bernal,* 174 Cal.App.2d 777,

784-785 [345 P.2d 140]; *People* v. *Johnson*, 99 Cal.App.2d 717, 732-733 [222 P.2d 335].)

Judgments of conviction affirmed.

Burke, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied March 10, 1964, and appellants' petition for a hearing by the Supreme Court was denied April 15, 1964.