[Crim. No. 11570.   Second Dist., Div. One.   June 20, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD RAY JOHNSON, Defendant and Appellant.

Donald Ray Johnson, in pro. per., and Marvin J. Segalove, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert A. Feldman, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant and one Brown were accused in five counts, as follows: count 1, armed robbery of Herman Libbey, count 2, kidnaping Herman Libbey to commit robbery; count 3, armed robbery of Tommy Webster; count 4, kidnaping Tommy Webster to commit robbery; and count 5, assault with a deadly weapon upon the person of Officer Higbee. In a jury trial, defendant Johnson was found guilty, and defendant Brown was found not guilty, on all five counts. Defendant Johnson appeals from the judgment.

Appellant contends (1) that he was denied a fair trial by reason of his not being present during a conference in the judge's chambers; (2) that the evidence is insufficient to support the verdict on the count of kidnaping Herman Libbey to commit robbery; and (3) that he was improperly sentenced.

Tommy Webster, who is the manager of the shoe department of Libbey's Department Store at 1763 East 103d Street in Los Angeles, testified in substance as follows: In the morning of January 11, 1965, defendant and a man came into the store. (The witness could not identify the other man.) Defendant and the man approached him, and defendant asked him whether he had any mohair suits. They walked over to the suit department and he introduced defendant to Mr. Hunter, an employee of the store. Mr. Hunter showed defendant some suits and defendant said that he did not see anything he liked. The other man then said: "I don't see anything over here that I like either. Let's go." Defendant then walked over to a counter where Mr. Libbey, the owner of the store, was counting money for that day's "deposit." Johnson pulled a revolver from his jacket, pointed it at Libbey, told him "not to

make any funny moves," and took the money and money bags from the counter. Johnson also told him (witness) to "raise his hands," pointed the revolver at his head, cocked the trigger, and said that it "was a new gun," he "hadn't used it," and "It had been three months since he had shot anybody." Johnson then took his (witness') wallet, which contained $5.00. Johnson also took Libbey's wallet, and told the other man, who also held a revolver, to take Webster (witness) to the shoe department and get a pair of shoes. The man, while holding a revolver against Webster's back, walked with him about 50 feet to the shoe department. While he was getting the shoes, he saw the officers enter the door.

Mr. Libbey testified in substance as follows: About 11 o'clock in the morning of January 11, he was in the store counting money and putting it in bags for deposit in the bank. Johnson and another man (whom he could not identify) entered the store and talked to a salesman. He continued counting the money. Later, Johnson "sprang" toward him, "flourished" a gun, and said, "Don't move or I'll kill you." Johnson then asked him where the bank deposit was, and he pointed to the money and bags on the desk and below the counter. Johnson took the money and bags of money, amounting to approximately $2,000. Johnson then asked for the witness' wallet, and the wallets and purses of other employees of the store. He (Libbey) pressed a "silent" alarm button. Johnson then hit him with the gun, held the gun against his head, and said "he'd like to kill" him. Johnson told him to move to a point in front of the counter, about 10 feet from where he was standing, and he moved there. Johnson then told Webster to get a pair of shoes. While Webster was getting the shoes, the officers entered the store. Then he (witness) crawled on the floor toward the door, and at that time the "shooting started." He heard several "shots," and saw Johnson "fire" his gun in the direction of the entrance where the officers had come in.

Officer Higbee testified in substance that on January 11, at approximately 11:45 a.m., while he was in a police car on 103d Street, about one block from the store, he heard on the radio of the car "a broadcast of a 211 silent, which is a robbery alarm"; he drove to the store, left the car, and looked into a window of the store; he saw defendant Johnson standing near a counter with a gun in his hand; he (officer) went to one of the doors in front of the store and said, "Police officers, drop your gun"; Johnson dropped down behind the counter and

fired a shot toward the front of the store; he (officer) fired several shots in Johnson's direction, and told him to throw his gun out; Johnson threw his gun out; and he (officer) picked it up and placed Johnson under arrest. (The gun, which was received in evidence, was identified by the officer and by witnesses Libbey and Webster as the same gun which Johnson had at the store.)

The People called three other witnesses (another officer and two other employees of the store). Their testimony in substance corroborated the testimony of Libbey, Webster, and Officer Higbee. (None of the witnesses could identify defendant Brown as the man who had been in the store with defendant Johnson. The man apparently left the store after the officer arrived.)

Defendant Brown and two witnesses, called by him, testified in support of his defense of alibi. After the second witness had testified, counsel for defendant Brown asked whether the case could be recessed until the next day. The district attorney and counsel for both defendants then had a discussion with the judge at the bench (not within hearing of jury), which was in substance as follows: Counsel for defendant Brown said that Brown intended to call Johnson as a witness on Brown's behalf. Counsel for defendant Johnson said that he (counsel) had advised Johnson not to take the stand, but that Johnson wanted to take the stand anyway. The judge recessed the case until the next morning, when the discussion was resumed in chambers. The judge said that it would be prejudicial to Johnson if Brown called him as a witness, and he refused, in the presence of the jury, to testify on the ground of his "privilege" against self-incrimination; but that if Johnson wanted to waive the privilege outside the presence of the jury, he would be permitted to do so. Counsel for Brown then said that, in the circumstances, he would rest Brown's case when the trial was resumed; and counsel for Johnson said that he would rest Johnson's case. The judge then called the case and, in the presence of the jury, both defendants rested.

After the defendants had rested, all counsel had a further discussion with the judge in chambers. The discussion was in substance as follows: Counsel for both defendants expressly waived the presence of defendants at the discussion. The district attorney said that when defendants had rested, he had the impression that Johnson did not want to testify, but that although "we have not heard this from his lips," there is some indication that Johnson wants to testify, and that he

(district attorney) did not want to foreclose anyone from testifying, especially in view of the decision in *People* v. *Blye,* 233 Cal.App.2d 143 [43 Cal.Rptr. 231]. Counsel for defendant Brown then said that, in his opinion, the *Blye* case applies only to a "defendant testifying on his own behalf, not being called as a witness"; that both defendants have rested; that defendant Brown no longer desires to call Johnson as a witness; and that defendant Brown would "object to reopening the case." Counsel for defendant Johnson said that "there has never been any problem about whether he [Johnson] was going to take the stand in his own behalf"; and he (counsel) "had advised him [Johnson] not to take the stand at all, but he said if the other defendant called him, he was going to take the stand in the other defendant's behalf." The judge then asked Johnson's counsel whether Johnson now desired to take the stand and said counsel replied: "No. When we rested, the other defendant did not call him and at this time he does not want to take the stand." The district attorney said that he would offer Brown's counsel the opportunity to reopen the case, and Brown's counsel said that Brown had rested and did not want to reopen the case.

Appellant first contends that he was denied a fair trial by reason of his not being present during the discussion in chambers after the defendants had rested.

As above shown, the discussion in chambers after defendants had rested, as well as the discussion in chambers before they had rested, related to Johnson's desire to testify on behalf of Brown if Brown called him as a witness. It was stated repeatedly by Johnson's counsel in the discussions that Johnson wanted to testify only as a witness for Brown, if called by Brown, and that Johnson did not want to take the stand in his own behalf. The result of the discussion in chambers after defendants had rested was that Brown no longer desired to call Johnson as a witness and objected to reopening the case for that purpose. It thus appears that the discussions in chambers did not prejudicially affect the rights of Johnson, and his absence from the discussions did not deprive him of a fair trial.

Appellant also contends that the evidence is insufficient to support the verdict on the count of kidnaping Herman Libbey to commit robbery. He asserts that Johnson's act of "moving" Libbey a distance of 10 feet does not constitute an act of kidnaping within the meaning of section 209 of the Penal Code.

In *People* v. *Enriquez*, 190 Cal.App.2d 481 [11 Cal.Rptr. 889], defendants "shoved" a grocery store owner about 6 feet toward the checkstand and cash register, at the same time threatening him with a gun. Appellants contended that moving the owner that distance was not an act of kidnaping within the meaning of section 209 of the Penal Code. The court held (p. 487) that said contention was not sustainable.

In the present case, after Johnson had pointed the gun at Libbey and threatened to kill him, Johnson took the money from the counter. Libbey, who was behind the counter, then pushed an alarm button and Johnson hit Libbey with the gun, again threatened to kill him, and told him to move to the front of the counter, a distance of approximately 10 feet. In *People* v. *Zurica*, 225 Cal.App.2d 25, 32 [37 Cal.Rptr. 118], the defendant moved the victim a few feet from where he was standing, presumably to remove him from access to an alarm button. In the present case, the evidence is sufficient to support the verdict on the count of kidnaping Libbey.

With reference to appellant's contention that he was improperly sentenced, he argues that even though he could be charged and convicted on all five counts, he cannot be punished on all the counts, because they stem from a single act—that the kidnapings were incidents of the robberies and were not separate therefrom. Counts 1 and 2, respectively, related to robbery and kidnaping of Libbey. Counts 3 and 4, respectively, related to robbery and kidnaping of Webster. Count 5 related to assault with a deadly weapon upon Officer Higbee. The evidence was sufficient to support the convictions on the five counts. "[S]ection 654 [Penal Code] proscribes double punishment, not double conviction; conduct giving rise to more than one offense within the meaning of the statute may result in initial conviction of both crimes, only one of which, the more serious offense, may be punished. [Citation.] The appropriate procedure, therefore, is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned." (*People* v. *McFarland*, 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 376 P.2d 449].) In the present case, the trial court sentenced the defendant to imprisonment on the five counts, and ordered that the sentences on counts 2 and 4 (kidnaping for the purpose of robbery) run concurrently with each other, and that the sentences on counts 1, 3 (first degree robbery), and count 5 (assault with a deadly weapon) be stayed pending appeal, if any, and service of sentence on counts 2 and 4, such

stay to become permanent upon completion of service on counts 2 and 4. ▓ Under the evidence in the present case, the trial court could properly conclude (1) that the kidnaping and the robbery of Libbey (wherein the defendant moved Libbey approximately 10 feet) were in furtherance of a single criminal objective; and (2) that the kidnaping and the robbery of Webster (wherein the unidentified robber, at the direction of defendant, took Webster from the suit department of the store to the shoe department) were also in furtherance of a single criminal objective. (See *People* v. *Chessman,* 38 Cal.2d 166 [238 P.2d 1001], where victim was moved approximately 22 feet; *People* v. *Wein,* 50 Cal.2d 383 [326 P.2d 457], where victims were moved distances ranging from a few feet to 50 feet; and *People* v. *Enriquez,* 190 Cal.App.2d 481 [11 Cal. Rptr. 889], where victim was moved approximately 6 feet.)

▓ The procedure adopted by the trial court herein to eliminate the effect of the judgment as to the robbery counts (i.e., to avoid double punishment) was similar to the procedure adopted in *People* v. *Niles,* 227 Cal.App.2d 749, 752 [39 Cal.Rptr. 11]. In that case the defendant was sentenced to the state prison on the burglary and the assault charge; however, as to the assault charge, the court granted a stay of execution of the sentence thereon pending appeal and service of sentence on the burglary charge, such stay to become permanent when the burglary sentence was completed. On appeal in that case (*Niles* case) the court said (p. 756): "It follows that the procedure adopted by the trial court in this case was a reasonable—and so far as we can see the only possible—reconciliation of the various policies involved." Since the trial court in the present case also stayed the execution of the sentence as to count 5 (assault with a deadly weapon—shooting at Officer Higbee), it appears that the court determined that the assault was also in furtherance of a single criminal objective, i.e., robbery of Libbey and Webster. It would seem that the assault was a separate offense; however, since this appeal does not involve an issue as to the correctness of such determination, this court does not make a decision thereon.

The trial court in sentencing the defendant adopted a proper procedure whereby double punishment will not result.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 7, 1966.