[Crim. No. 5673.   First Dist., Div. Two.   Mar. 22, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. RODNEY HAROLD HODGE, Defendant and Appellant.

Leo Paoli, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, J.*—Defendant appeals from conviction, after jury verdict, of violation of section 459, Penal Code (first degree burglary).

QUESTION PRESENTED

Did the trial court err in admitting a confession allegedly obtained in violation of *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and *Miranda* v. *Arizona* (1966) 384 U.S. 436[1] [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]*Miranda* cannot apply to trials commencing before June 13, 1966, the date on which it was decided. (*Johnson* v. *New Jersey* (1966) 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]; *People* v. *Rollins* (1967) 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].) The instant case was tried in September 1965.

## EVIDENCE

At approximately 6:30 or 7 p.m. on a Friday, Joseph McDevitt, wife and children, left their Piedmont home for the weekend. Two days later, at approximately 10 p.m., they returned. Mrs. McDevitt noticed that the front door of the house was ajar and a piece of furniture had been placed near that door. She then noticed two men coming through the back by a path leading from the family room. When she asked who they were, they did not reply but continued on. She called to her husband to stop them. McDevitt then saw one man run down the street and the other run across the street. McDevitt yelled to the first man to stop and then pursued the second man, running across the street to intercept him. Although the man ultimately escaped, McDevitt was within 20 feet of him at one point of the chase. He identified the man as defendant.

Certain property had been taken from the home and other property placed in a position to be taken. The french doors in the family room were ajar and the glass in the doors was broken. The door in a service area behind the kitchen had been split and the lock broken. Clothing and other items had been strewn around in the den and bedrooms. The window in one of the bedrooms was broken and open.

Although Mrs. McDevitt could give only a general description of the men, Mr. McDevitt selected defendant's photograph from among those shown by the Piedmont police and at the trial identified defendant.

Martha Worrell testified that between 8 and 8:45 p.m. she saw a blue car pass her near the McDevitt home three times. She also saw it parked near the McDevitt home. She identified defendant as one of the two male occupants of the car. Two days later Piedmont police arrested defendant. Inspector Lamp informed defendant of his constitutional rights. Defendant asked to contact an attorney named Merrill. Defendant made no statement, except to say, "I have been had." He contacted the attorney by telephone. The attorney visited him, and defendant was released on bail.

Approximately 13 days later, defendant was arrested in Hayward on an unrelated charge involving possession of a gun and disturbing the peace. While in custody in Hayward, he asked to talk to Inspector Lamp of the Piedmont police, the officer who had arrested him for the prior offense and who had instructed him concerning his rights. When Lamp arrived at the Hayward police station, defendant informed him that

defendant's true name was Hodge,[2] and that with regard to the Piedmont "incident," he and Roger Newman were responsible for the McDevitt burglary and that he wanted to plead guilty of it. He further stated that he wanted the police to find Newman and gave them information as to his whereabouts. Lamp did not recall defendant asking him that any other charges be dropped, but did state that defendant mentioned a gun and that he was an escapee from a senior boys' camp.

Defendant, on the witness stand, admitted that he had asked the Hayward police to call Inspector Lamp and that he had told the latter that his true name was Hodge. He testified that he told Lamp he was charged with possession of a gun, disturbing the peace and escape from Senior Boys' Camp, and that he wanted all these charges combined into one. He denied telling Lamp that he had committed the Piedmont burglary, but claimed that he offered to plead guilty to it if Lamp could have the other charges dropped, and if he could get defendant "in the County so that I could visit my girl." He said that he wanted to talk to Lamp because he thought the latter, as an inspector, had a lot of pull and hoped to get a "good deal" for himself.

Over his attorney's objection, defendant called Newman to testify for the defense. Newman testified that he had committed the McDevitt burglary but that his accomplice was not defendant. He admitted that defendant and he were good friends.

This testimony opened the door for the prosecution to recall Lamp, who testified that Newman had told him that defendant was his accomplice in the McDevitt burglary.

## DEFENDANT'S CONFESSION

■ Defendant's sole contention is that his confession was inadmissible under *Escobedo, Dorado* and *Miranda.* As we have stated, *Miranda,* because of the time element, cannot apply. Defendant overlooks the fact that the rules of the former two cases do not render inadmissible a statement or confession volunteered by a defendant and not elicited during a process of interrogation. (*People* v. *Jacobson* (1965) 63 Cal. 2d 319, 327-328 [46 Cal.Rptr. 515, 405 P.2d 555]; *People* v. *Cotter* (1965) 63 Cal.2d 386, 393-397 [46 Cal.Rptr. 622, 405 P.2d 862].) In the latter case, the court pointed out that a voluntary confession is often the best evidence of guilt ob-

---

[2]His Piedmont arrest was under the name Urbanik .

tainable and that [n]either this court, nor the United States Supreme Court, has ever taken the position that the desire of a guilty man to confess his crime should be stifled, impeded, discouraged, or hindered in any way. The contrary is true.'' (P. 396.)

In the instant case, the record shows that defendant himself conceived the idea of sending for Officer Lamp and discussing with him the various charges pending against him. Although the conversation with Lamp occurred at a time when defendant had apparently already retained attorney Merrill to represent him on the burglary charge, defendant was motivated by a desire to get a ''good deal'' for himself and perhaps also by a desire to acknowledge his guilt. Defendant contends that because of his youth (18 years of age) and his statement when asked when he ran away from Senior Boys' Camp, ''I don't have a too good memory but maybe six months ago,'' it cannot be held that he impliedly waived his constitutional rights when he sent for Inspector Lamp and told his story. From his own testimony and his statement to Inspector Lamp, it is clear that defendant knowingly and understandingly waived his right to be again instructed concerning his constitutional rights. The statements which he made to Lamp were unquestionably voluntary and were not the product of an interrogation of any kind. As Inspector Lamp put it, ''I acknowledged the fact that he requested me to come out and I asked what for. . . . Then we just began the conversation.'' *Escobedo* v. *Illinois, supra,* and *People* v. *Dorado, supra,* are clearly inapplicable to the situation here presented.[3]

Judgment affirmed.

Agee, Acting P. J., and Taylor, J., concurred.

---

[3] In view of the inapplicability of *People* v. *Dorado, supra,* it is unnecessary to discuss the People's questionable contention that that case constitutes a misinterpretation of *Escobedo* v. *Illinois, supra,* and is no longer the law of this state.