[Crim. No. 12056. Second Dist., Div. One. Mar. 30, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WESLEY E. HANEY, Defendant and Appellant.

Erling J. Hovden, Public Defender, Leon M. Salter and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—Wesley E. Haney appeals his conviction for murder in the second degree after he was found guilty by a jury. The degree of the crime was determined by the court pursuant to stipulation that the jury need not set the degree.

Appellant sets forth numerous contentions on appeal, asserting *inter alia* that there was an unreasonable delay before he was brought before a magistrate, that he was deprived of his right to counsel during interrogation, having made no effective waiver thereof, that the testimony of two witnesses was improperly admitted at the trial and that his requested manslaughter instruction was improperly denied. We find each of these contentions equally without merit under the facts and circumstances which follow.

The scene of the crime was the Sophia Montessori School in Santa Monica. Hazel Mawby, a secretary at the school, suggested that her friend and roommate, Janet Johnson, apply for a position there. Janet filed an application and was interviewed by Mrs. Laughlin, president of the school, on May 17, 1965. On May 19th, before leaving the office, Mrs. Laughlin placed Janet's application and others in a file basket on top of her desk. That same afternoon, when Hazel came home, Janet told her that she had just heard from Mr. Laughlin,

who also participated actively in the school's affairs, and he wanted her to meet him at the school that evening for another interview.

Janet left the apartment for this presumed engagement at 6:10 p.m. In the morning when Hazel discovered Janet had not returned home all night she contacted Mr. Laughlin, relating to him Janet's story about his call and the interview scheduled for the previous evening. Mr. Laughlin denied both the call and the appointment and he thereupon notified the police. Janet's body was discovered in the carport of an apartment house in Santa Monica during the morning following her disappearance. She had been strangled; the body bore bruises, and traces of semen were found in the vaginal area.

Haney, who was a night janitor at the school, usually worked from 2 to 10 p.m., but on May 19th he did not report until about 4 p.m. because he was recuperating from a recent illness. Classes ended at 3 p.m., Hazel and Mrs. Shutz, the bookkeeper, stayed until 5 p.m. that day, then locked up and left. Harvey Hallenberg, one of the teachers who also left about 5 p.m., returned to the school for a few minutes around 6 p.m. to pick up a forgotten item and saw Haney working but believed no one else was in the building when he finally left. Officer Sollee and Detective Ortega, of the Santa Monica Police Department, in the course of investigating the school personnel, first visited Haney at his apartment early on the afternoon of May 20, 1965. Haney verified his employment, that he had worked the night before, that he had cleaned Mrs. Laughlin's office, and that he had been left alone in the building when Hallenberg finally departed at 6 p.m.

The police, at that first interview, told Haney that Janet had been murdered while evidently either on her way to the school or thereabout, and further advised him that he had a right to call an attorney, that he need make no statements, but that any statement he did make might be used against him in the event court proceedings resulted. Appellant said that he had left work early and had gone to the theatre with his wife the night of May 19th. Upon request he allowed the officers to inspect his car, the clothes he wore the night before and his theatre stubs. He thereafter voluntarily accompanied the officers to the police station for fingerprinting and photographs. One week later, on May 27th at around 4 p.m., Officer Fluty, also of the Santa Monica Police Department, requested that Haney return for questioning but he was not placed under arrest and immediately after the interview he was taken home.

Finally, on Thursday afternoon, June 3, Officer Fluty took Haney, at his own request, to the district attorney's office in downtown Los Angeles for a lie detector test. The police each time, in the same manner, informed Haney of his constitutional rights before questioning, and Haney repeatedly acknowledged that he understood. Only after the lie detector examination was concluded at 8 p.m. on June 3d was Haney arrested and returned to the Santa Monica Police Station once more, this time to be booked.

Following Haney's arrest, the admonition concerning his constitutional rights was renewed and then officers Fluty, Eckstein and Hicks interrogated him for two hours. Thereafter, at Haney's request, his wife was brought to the police station to visit him, and he refused her offer to contact an attorney for him. At about 9:30 Friday morning, after reiterating the statement concerning constitutional rights, the police interrogated Haney for about two more hours and repeated this procedure later in the afternoon and again on Saturday, morning and afternoon. During the entire sequence of interrogation Haney responded voluntarily and at no time expressed the desire for counsel. He was at no time advised of his right to court-appointed counsel at that early stage but when Eula Hatchett, who passed as Haney's wife, spoke to Captain Hicks she was told that an attorney would be appointed to represent appellant upon arraignment. On the morning of Saturday, June 5, Haney tendered a written partial confession and that afternoon he confessed under stenographic interrogation the substance of which he later wrote out and signed.

■ Haney contends that his confession was improperly received because he was not fully advised of his constitutional rights pursuant to *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed. 2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. He concedes, however, that he was at all times conscientiously informed of his constitutional rights pursuant to *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. He was clearly admonished concerning all constitutional rights except his right to the advice and guidance of court-appointed counsel during the interrogation period. Since Haney's trial took place prior to the decision in *Miranda* v. *Arizona, supra,* the police fulfilled their obligation to him as they then understood it. They took elaborate precautions to reiterate his rights preceding each interrogation session. The California Supreme Court following *Johnson* v. *New Jersey,* 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772] has declined to apply the *Mi-*

*randa* result retroactively in this state (*People* v. *Rollins,* 65 Cal.2d 681, 686 [56 Cal.Rptr. 293, 423 P.2d 221]; *People* v. *Thomas,* 65 Cal.2d 698, 700 [56 Cal.Rptr. 305, 423 P.2d 233].)

■ Appellant's claim that he did not intelligently and knowingly waive those clearly enunciated constitutional rights is patently without merit. He gave intelligent, articulate testimony at his trial, and on each interrogation he expressly acknowledged that he understood the admonitions of the police and that he replied only voluntarily to their questioning. The fact that he was under arrest at the time cannot, as a consequence, be considered a compelling coercive factor.

■ Appellant contends that there was an unreasonable delay in bringing him before a magistrate for arraignment following his arrest, and that this delay was prejudicial because only in this "interrogation environment" were his incriminating statements obtained. He asserts that the confession thus allegedly tainted by his unreasonable detention was improperly received in evidence (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 457) thus rendering it prejudicial as a matter of law. (*People* v. *Williams,* 235 Cal.App.2d 389, 400 [45 Cal. Rptr. 427].)

Haney's detention for a period of additional interrogation and investigation prior to his arraignment however was justified by the circumstances. He was arraigned before a magistrate on the second legal business day following the day of his arrest; thus, his detention was not prima facie unreasonable under Penal Code, section 825. (*People* v. *Ross,* 236 Cal.App. 2d 364 [46 Cal.Rptr. 41].) At Haney's first interrogation late on Thursday evening, June 3d, he denied all participation in the crime. However, on Friday, June 4th, he made another statement in which he admitted finding Janet's dead body in the women's washroom at the Montessori School, and this he repeated to a stenographer. He accompanied police to the scene that afternoon and later visited with them a nearby tavern where he claimed to have been drinking beer at the time Janet should have arrived at the school: the tavern employees denied having seen him. On Saturday morning Haney's interrogation continued and he then rendered a written statement in which he confessed finding Janet's application, calling her residence to make an appointment at the school for "Mr. Laughlin," and finally killing her after she refused his advances upon her arrival at the school. The course of events only gradually and over a period of time disclosed the extent of Haney's involvement with the victim, and the police were

justified in holding him over the weekend during which their reasonable suspicion upon arrest matured into a competent charge of murder. (*People* v. *Ross, supra,* 236 Cal.App.2d 364, 369.)

██ Appellant next suggests that the court committed prejudicial error in allowing the testimony of Mr. Hallenberg from the preliminary hearing to be read into the record at the trial. This testimony was not crucial to the prosecution. Haney himself admitted, and it was at no time disputed, that he was present at the Sophia Montessori School from about 4 p.m. until 9:30 p.m. on the evening of May 19th except for the claimed brief absence around 6:30 p.m. which was after Mr. Hallenberg left. Appellant, however, claims the use of the transcript was improper because the prosecution failed to use due diligence to locate the witness (Pen. Code, § 686, subd. 3) and the use thereof violated Haney's right to confrontation. (*Pointer* v. *Texas,* 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065].)

In California it is well settled that merely showing a witness is absent from the state, especially if he intends to reside permanently elsewhere, provides a sufficient foundation for the introduction of prior recorded testimony. ''Where the evidence is sufficient to show that the witness is absent from the state, the due diligence requirement [of Pen. Code, § 686, subd. 3] is inapplicable. [Citations.]'' (*People* v. *Carswell,* 51 Cal.2d 602, 605 [335 P.2d 99].) ██ In the instant case, moreover, defendant was represented by counsel at the preliminary hearing and the witness was actually cross-examined by his counsel on that occasion, hence the use of the transcript did not infringe his right of confrontation. ██ '' 'Due process of law is not denied by the introduction of the deposition of a witness taken upon the preliminary examination before a committing magistrate in the presence of the defendant where he cross-examined or had the opportunity of cross-examining the witness when such witness is absent from the state or the prosecutor has been unable to procure his attendance' [citation].'' (*People* v. *Terry,* 180 Cal.App.2d 48, 53 [4 Cal.Rptr. 597].)

(*Pointer* v. *Texas, supra,* 380 U.S. 400), relied on by appellant, held that the use of the preliminary hearing transcript constituted a denial of the defendant's guarantee of confrontation under the Sixth Amendment only when he was not represented by counsel at the preliminary hearing. ''The case before us would be quite a different one had Phillips' state-

ment been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine. . . .'' (*Pointer* v. *Texas, supra,* p. 407.)

Appellant further contends that Doctor Kade failed to qualify as an expert in the field of infertility, hence he was not entitled to express a testimonial opinion on the subject of sperm survival. We cannot agree. Doctor Kade's testimony established that he was a qualified general practitioner and medical expert with 10 years' experience as an autopsy surgeon in the county coroner's office. The trial court exercised its sound discretion in admitting in evidence his expert opinion on a subject encompassed within general medical knowledge. Doctor Kade's background of practical experience or particular qualification with respect to fertility studies could affect only the weight of his testimony and not its admissibility. (*Goodman* v. *Community Sav. & Loan Assn.,* 246 Cal. App.2d 13. 23 [54 Cal.Rptr. 456].)

''The opinion of a witness 'on a question of science, art, or trade, when he is skilled therein' may be given in evidence. [Citation.] This commits to the trial court, in each case, the determination of the issue whether or not the witness on the stand is 'skilled' in the 'science, art, or trade' to which the question asked of him relates. As said by Wigmore, the competency of an expert 'is in every case a relative one, i.e. relative to the topic about which the person is asked to make his statement.' [Citations.] Where the subject matter of an opinion relates 'to matters within the knowledge and observation of every physician and surgeon,' the witness need not have specialized in that field. [Citation.]'' (*Estate of Gore,* 119 Cal.App.2d 796. 799 [260 P.2d 859].) In fact, Doctor Kade had frequently been required to remove and examine for the presence of sperm vaginal samples from deceased women and he was thoroughly familiar and experienced with medical knowledge in the realm covered by his testimony.

Finally, Haney's counsel made a timely request for instructions with respect to voluntary and involuntary manslaughter which was denied by the trial court. Appellant contends that the court erred in rejecting the manslaughter instruction on the basis that ''Since the jury was not advised that diminished [mental] capacity could negate the existence of malice and that if malice were absent the offense could not be murder, a material issue was withheld from its consideration.'' Moreover, ''It has been repeatedly held that it is reversible error to

refuse a manslaughter instruction in a case where murder is charged, *and the evidence would warrant a conviction of manslaughter.*" (Italics added.) (*People* v. *Carmen,* 36 Cal.2d 768, 773-774 [228 P.2d 281]; see also *People* v. *Modesto,* 59 Cal.2d 722 [31 Cal.Rptr. 225, 382 P.2d 33]; *People* v. *Conley,* 64 Cal.2d 310, 319 [49 Cal.Rptr. 815, 411 P.2d 911].)

The record herein is devoid of evidence which might support a conviction for involuntary manslaughter and the sole evidence asserted as a basis for a voluntary manslaughter instruction consists of two vague statements made by Haney to the police before his ultimate full confession. Once he said: "In my own mind I don't really know if I killed her, and I hope to Almighty God I didn't, but to all provocations I must have." In a later statement he said that in fending off his assault "She kept on hitting at me, and I guess I lost my head and accidentally killed her." These were preliminary admissions by appellant which preceded and adumbrated the full confession he made on Saturday afternoon. These statements by themselves fail to establish a basis for the requested instruction and, read in conjunction with other evidence introduced at the trial, these assertions are totally unsupportable. Appellant neither raised the issue nor introduced evidence of diminished mental capacity, nor was there evidence that he might have had reasonable provocation for the homicide. Haney's firm and consistent defense was the continued emphatic assertion, confirmed by his testimony in court, of his position that only his statement rendered on the morning of June 4th, in which he admitted having found Janet's dead body in the washroom, was true while *all* subsequent statements given to the police were false.

The prosecution contended, and the evidence adduced at the trial confirmed, that Haney lured Janet to the school with the intent to commit rape and when she resisted he strangled her. Haney's statements were in conflict; his fingerprints were found on the applications in Mrs. Laughlin's file basket and Janet's application was missing. In addition, appellant's alibi as to his whereabouts at 6:30 p.m., when Janet probably arrived at the school, proved false and he abandoned his story about going to the movies. A cellmate's testimony relating to conversations held with Haney during his incarceration pending trial further tended to confirm Haney's final confession and suggested that Haney flushed the missing application down the toilet. The record is replete with evidence that the murderer lured his victim to the school for an intended attack

on her person and thereafter any homicide which took place was imbued with essence of murder.

The court is obligated to instruct the jury on every offense included in the charge which the evidence tends to prove. (*People* v. *Miller*, 57 Cal.2d 821 [22 Cal.Rptr. 465, 372 P.2d 297] ; *People* v. *Carmen, supra,* 36 Cal.2d 768.) However, if the evidence discloses that the defendant is guilty, if at all, only of the greater offense, it is not error to refuse an instruction relating to a lesser included offense. (*People* v. *Thomas,* 58 Cal.2d 121 [23 Cal.Rptr. 161, 373 P.2d 97].)

In those cases relied upon by appellant to support his present assertion (i.e. *People* v. *Modesto, supra,* 59 Cal.2d 722; *People* v. *Carmen, supra*; *People* v. *Conley, supra,* 64 Cal.2d 310) the defendant's obvious participation in the homicide was never seriously disputed and thus a manslaughter instruction was justified upon a slim reed of evidence which could reasonably be elaborated to incorporate the elements of a defense of diminished capacity or provocation under the plea of not guilty. In the instant case we are instead confronted by a defendant who denied absolutely any and all connection with the crime, including the above recitals. We are persuaded that there is no evidence upon which the court could justify the requested manslaughter instruction and that it was properly refused.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 24, 1967. Peters, J., was of the opinion that the petition should be granted.