265 Cal.App.2d 673 (1968)
THE PEOPLE, Plaintiff and Respondent,
v.
ANDREW LEE ASHFORD, Defendant and Appellant.
Crim. No. 6324. 
California Court of Appeals. First Dist., Div. One. 
Sept. 16, 1968.
 Gordon E. Reynolds, under appointment by the Court of Appeal, for Defendant and Appellant.
 Thomas C. Lynch, Attorney General, Edward P. O'Brien and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.
 SIMS, J.
 Defendant has appealed from a judgment sentencing him to state prison, with an admitted prior conviction for burglary, after a jury found him guilty of robbery in the second degree. He contends that he was denied his rights under the Sixth Amendment of the United States Constitution because the court, over his objection, admitted in evidence the testimony of the victim as it was reported in a prior trial which had resulted in a jury disagreement. He also asserts that prejudicial error resulted when the court permitted a bailiff to testify to a damaging admission made by the defendant during a recess at the prior trial, over the defendant's objections that there was no foundation laid to show that he had been apprised of his legal rights, that there was *675 no foundation laid to use his declaration for impeachment, and that the testimony was improper rebuttal evidence.
 The evidence
 The testimony of the victim, Clarence Gordon, given at the first trial, was that at about 2 a.m. on April 22, 1966, he had driven his car into a filling station, located in the area of Goss and Wood Streets in Oakland, planning to park his car there while he went to a restaurant located off Wood, on 7th Street. Earlier that evening he had gone to a bar on San Pablo Avenue in the vicinity of 19th and 20th Streets and stayed there until the last show which was about 1:30 a.m. As he drove into the filling station, a young man approached, told him his car would block other parked cars, and asked him to drive around the corner. He drove around the corner and parked his car on Goss Street.
 While parking, defendant Ashford came over and engaged Gordon in conversation. Defendant wanted to know if he could "fix him up with a girl." The conversation lasted between five and ten minutes. Gordon told defendant he had "no use" for a girl. Gordon then got out of the car and started toward the sidewalk.
 At this point, defendant appeared to speak to someone Gordon could not see. When Gordon turned to look defendant struck him on the right cheek and knocked him to the ground. He continued to beat Gordon on the shoulders and back and he held his arm while another man removed his wristwatch, ring and wallet. Defendant's accomplice was the same person who at the filling station had told Gordon to drive around the corner and park.
 After defendant and his accomplice had finished removing Gordon's possessions, they ran toward Wood Street where they were joined by a third man who began to run with them. He had some $20 in his wallet. After they left him, Gordon got into his car and drove to a Standard station at 7th and Cypress Streets where he spoke with Officer Peirson of the Oakland Police Department.
 Gordon told the officer about the robbery and gave him a description of the persons involved. He described defendant as wearing a white or grey sweater. Officer Peirson had four photographs with him which he showed to Gordon. Gordon selected a photograph of defendant and identified him as one of the robbers. [fn. 1] *676
 Officer Peirson testified that Gordon had an odor of alcohol about him but that he walked without difficulty and that his speech was clear. He also testified that Gordon told him he was down there looking for a girl. Officer Peirson testified that during the evening of April 21, 1966 or in the early morning hours of April 22, 1966, before the incident was reported, he had seen defendant in the vicinity of 7th and Willow Streets.
 Officer Beccaccio of the Oakland police, called to the gasoline station by Officer Peirson, took the report of the robbery and a description of the persons involved from Gordon. Officer Beccaccio testified that Officer Peirson had some photographs with him which included one of defendant. After Officer Beccaccio took the report, Peirson left the scene. Officer Beccaccio also testified that sometime between 12:45 and 2 a.m., he had observed defendant on 7th Stret between Campbell and Wood Streets. When he saw defendant he was with some Negro males. He indicated defendant had been wearing a "greenish color sweater."
 On June 28, 1966, Gordon viewed a lineup in which defendant was one of five or six people exhibited.prior to the lineup, Gordon was shown photographs of various men, and again identified a photo of defendant as the robber. After the lineup defendant was taken to a room where Gordon confronted him *677 and made a positive identification. [fn. 2] Based upon the identification, the Oakland Police Department secured a complaint from the district attorney's office charging defendant with robbery.
 Defendant testified that he did not see Gordon on the evening of April 22, 1966, and that he did not rob him. He testified that from about 11 p.m. on April 21, 1966, to about 2:15 a.m. on April 22, 1966, he was working at the Continental Club; that while at the club he met his fiancee, Geneva Babbitt, and his cousin, Corinne Owens; that when he left the club at 2:15, he was with both girls and that they went to a place known as "Georgie's Doggies"; that from there he and Geneva walked Corinne home; that they then took a bus to Geneva's home; and that from there he walked to the Lakeside Hotel where he lived.
 Defendant's cousin, Corinne Owens, testified that she was with defendant from about 11 p.m. on April 21, 1966, until 3 a.m. the following morning; that they stayed at the Continental Club until about 2 a.m., left together when it closed and walked to the eating place; that defendant was appearing at the Continental Club, where he was singing under the name Lee Sensation; and that after leaving the restaurant, defendant and Geneva walked her to her home where they arrived about 3 a.m. She indicated she recalled the occasion because she had recorded it in her diary.
 The remaining pertinent facts are referred to below.
 prior testimony
 [1a] Gordon originally testified at a preliminary hearing on July 20, 1966, and subsequently at a trial on September 28 and 29, 1966, which ended in a mistrial. The defendant, whose motions for reduction of bail, and to be released on his own recognizance were denied, was entitled to be retried on or before November 28th, the day on which the second trial commenced. (Pen. Code, 1382, subd. 2.) Both counsel were aware of the directive to commence the new trial within 60 days. At the commencement of the trial the prosecution produced evidence which showed that Gordon had left the state on November 10, 1966, and that he would not return until December 12th. It appeared that the witness had gone as a delegate to a national convention of real estate brokers in Florida, and had made plans which included a Caribbean cruise and travel in the western United States. *678
 The trial date was apparently fixed at a hearing on November 14th after the victim had left. The information concerning his departure was secured about one week later. This is not a case where the prosecution negligently, or purposely, permitted a witness to leave the jurisdiction before he could be called to give his testimony personally. (Cf. Motes v. United States (1900) 178 U.S. 458, 471-474 [44 L.Ed. 1150, 1154-1156, 20 S.Ct. 993].)
 The prosecution relied upon the provisions of section 686 of the Penal Code which read as follows: "In a criminal action the defendant is entitled: ... 3. To ... be confronted with witnesses against him, in the presence of the court, except ... that in the case of offenses hereafter committed the testimony on behalf of the People or the defendant of a witness deceased, insane, out of jurisdiction, or who cannot, with due diligence, be found within the state, given on a former trial of the action in the presence of the defendant who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine a witness, may be admitted." (Stats. 1911, ch. 187, 1, p. 364. Amended effective January 1, 1967, by Stats. 1965, ch. 299, 1, p. 1297 by deleting the latter provisions. See also Evid. Code, 240 and 1291.) No objection was made to the adequacy of the showing that the witness was out of the state. It was sufficient foundation for the admission of the prior testimony under precedents existing at the time of trial. (People v. Carswell (1959) 51 Cal.2d 602, 605-606 [335 P.2d 99]; People v. Dinkins (1966) 242 Cal.App.2d 892, 901 [52 Cal.Rptr. 134]; People v. Banks (1966) 242 Cal.App.2d 373, 376-377 [51 Cal.Rptr. 398]; People v. Dozier (1965) 236 Cal.App.2d 94, 102-104 [45 Cal.Rptr. 770]; and see People v. Berger (1968) 258 Cal.App.2d 622, 627 [66 Cal.Rptr. 213]; People v. Gibbs (1967) 255 Cal.App.2d 739, 741-742 [63 Cal.Rptr. 471]; People v. Haney (1967) 249 Cal.App.2d 810, 816 [58 Cal.Rptr. 36]; and People v. Washington (1967) 248 Cal.App.2d 470, 475 [57 Cal.Rptr. 487].)
 Defendant relies upon Pointer v. Texas (1965) 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065] and Douglas v. Alabama (1965) 380 U.S. 415 [13 L.Ed.2d 934, 85 S.Ct. 1074] for the proposition that it is a violation of a defendant's Sixth Amendment rights to use a witness' prior testimony unless the opportunity for cross-examination in the prior proceedings was "complete and adequate." (380 U.S. at pp. 407 and 410 [13 L.Ed.2d at pp. 928 and 930].) He contends that a *679 certain matter ultimately brought out at the first trial evoked a new lead for cross-examination which could not be pursued because of the absence of the witness. (Cf. People v. Redston (1956) 139 Cal.App.2d 485, 494-496 [293 P.2d 880]; and see People v. Johnson (1968) 68 Cal.2d 646, 651-654 [68 Cal.Rptr. 599, 441 P.2d 111].)
 Gordon testified that he parked his car to go to a restaurant for a sandwich. He denied he told defendant that he was looking for a woman. Officer Peirson subsequently testified at the first trial, and again at the second, that Gordon indicated that he had been "looking for a girl." At the second trial, the defendant attempted to bring out on cross-examination of the bailiff that in the course of the conversation with the defendant the victim was referred to as a "hype" or user of narcotics. The defendant so testified. Insofar as these matters were known at the time of the first trial, the defendant, if he considered further cross-examination of Gordon important, could have recalled him. In any event, since the contradiction regarding Gordon's purpose in being in the area where he was robbed, was manifest at the second trial, no prejudice is demonstrated from the failure to cover the matter revealed by Officer Peirson's testimony at the first trial. It is questionable whether it would have been proper to pursue cross- examination on the subject of the witness' use of narcotics. There was no attempt to show that his perception, recordation, recollection or recall was affected by the use of narcotics. [2] A witness may not be impeached by evidence of specific acts of misconduct other than a felony conviction. (Code Civ. Proc., 2051; People v. Stanley (1962) 206 Cal.App.2d 795, 798-799 [24 Cal.Rptr. 128, 8 A.L.R.3d 745]; People v. Buono (1961) 191 Cal.App.2d 203, 229-233 [12 Cal.Rptr. 604].)
 [1b] The effect of Pointer and Douglas upon the use of prior testimony has been phrased as follows: "Allegiance to the confrontation guarantee requires California courts to inquire into the circumstances of each case and to determine whether the proffered testimony was given under circumstances which permitted adequate cross-examination. (People v. Banks, 242 Cal.App.2d 373, 378-379 [51 Cal.Rptr. 398]; see also People v. Haney, 249 Cal.App.2d 810, 816-817 [58 Cal.Rptr. 36]; People v. Washington, 248 Cal.App.2d 470, 473 [57 Cal.Rptr. 487])" (People v. Gibbs, supra, 255 Cal.App.2d 739, 742. In addition to the cases cited see, People v. Johnson, supra, 68 Cal.2d 646, 651-653 and 658-659; People v. Hernandez *680 (1968) 263 Cal.App.2d 242, 250-252 [69 Cal.Rptr. 448]; and People v. Berger, supra, 258 Cal.App.2d 622, 626-627.)
 In Gibbs the court observed, "The nature of the proceding; the character of the witness and his connection with the events; the extent and subject of his direct testimony; the time and preparatory opportunities available to the accused and his attorney--these are some of the influential factors." (255 Cal.App.2d at p. 743.) The court found that there had been no time to prepare or investigate before the preliminary hearing, that the witness, an informer, was the only one who observed and could testify to the acts constituting the offense, that informers are apt to disappear, and that an informer's testimony is often suspect because of the expectancy, if not the promise, of immunity or leniency. It concluded on the basis of all of these facts that there had not been complete and adequate cross-examination of the absent witness at the prior preliminary hearing. (255 Cal.App.2d at pp. 744-745.) This suggests that failure to probe into an informer's fear of prosecution and hope of leniency may be a factor rendering inadequate the cross-examination of such a witness at a prior hearing. On the other hand in People v. Banks, supra, the court noted that the defendant's testimony, which showed facts indicating that the witness was biased, because he thought he had been reported for welfare irregularities by the defendant, did not invalidate the use of the testimony the absent witness had given at the preliminary examination although he had not then been interrogated on that subject. (242 Cal.App.2d at pp. 379-380.) People v. Washington, supra, recognizes that failure to cross-examine a witness on an impermissible subject of impeachment--conviction of a misdemeanor--does not render the prior testimony inadmissible because of inadequate cross-examination. (248 Cal.App.2d at pp. 476-477.)
 In this case the nature of the proceeding, a full dress jury trial, suggests that there was ample time and preparatory opportunity for the defendant and his attorney to review the matters on which the witness should be examined. There can be no contention that cross-examination was limited because of some adept and skilled practice of limiting cross-examination at a preliminary hearing. (Cf. People v. Gibbs, supra, 255 Cal.App.2d 739, 744.) [fn. 3] The fact that the witness was the *681 victim and furnished the sole direct testimony of the events tips the scales toward requiring reappearance, but it is not a circumstance which overrides all other considerations. (See People v. Berger, supra, 258 Cal.App.2d 622, 626-627 (robbery); People v. Haney, supra, 249 Cal.App.2d 810, 816-817 (eyewitness--victim murdered); People v. Washington, supra, 248 Cal.App.2d 470, 473-474 (robbery victim); People v. Dinkins, supra, 242 Cal.App.2d 892, 901-902 (assault victim); People v. Banks, supra, 242 Cal.App.2d 373, 378-379 (eyewitness--victim murdered); and People v. Dozier, supra, 236 Cal.App.2d 94, 105 (victim of assault and robbery); and cf. People v. Gibbs, supra, 255 Cal.App.2d 739, 745 (informer--eyewitness).) With respect to the witness' character and reliability the jury were apprised that the witness was one who was frequenting a neighborhood which had a reputation as an area of high prostitution activity; that the officer's testimony indicated that the witness had made a statement which contradicted his testimony that he told defendant he had no use for a girl; that a discrepancy existed between the testimony of the witness and that of one of the officers in regard to the color of the sweater which each had observed the defendant wearing on the night of the crime; that there were discrepancies between the testimony of the witness and the testimony of his companion earlier in the evening with respect to their activities and the time they parted; and that the restaurant the witness had planned to go to had been relocated some years earlier.
 On the record it is concluded that the defendant had a complete and adequate opportunity to cross-examine the victim-witness and had done so. The record of the earlier trial satisfies the constitutional requirements set by Pointer and Douglas. (People v. Hernandez, supra, 263 Cal.App.2d 242, 252; People v. Berger, supra, 258 Cal.App.2d 622, 626-627; People v. Haney, supra, 249 Cal.App.2d 810, 816-817, People v. Washington, supra, 248 Cal.App.2d 470, 473-474 and 476-477; People v. Dinkins, supra, 242 Cal.App.2d 892, 901-902; People v. Banks, supra, 242 Cal.App.2d 373, 378-379; People v. Dozier, supra, 236 Cal.App.2d 94, 104-105; but cf. People v. Gibbs, supra, 255 Cal.App.2d 739, 745.)
 Following briefing on appeal, but prior to oral argument, the United States Supreme Court filed its decision in Barber v. Page (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318]. *682 The court overturned, on collateral attack by application for a writ of habeas corpus, a conviction predicated upon the prior testimony of an apparent accomplice, who had waived his privilege against self-incrimination, and had testified at the preliminary hearing of defendant's case. The testimony, as reported, was admitted into evidence at the defendant's trial in Oklahoma, after a showing that the witness was confined in a federal prison in Texas. The record indicated that there was no cross-examination of the witness at the preliminary hearing. Although there was a serious question whether defendant's counsel, who had represented both the defendant and the turncoat prior to the latter's defection, could ethically cross-examine the witness, the court assumed he had had an adequate opportunity to do so. The majority opinion concluded, "In short, a witness is not 'unavailable' for the purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good faith effort to obtain his presence at the trial." (390 U.S. at pp. 724-725 [20 L.Ed.2d at p. 260].)
 The rule has been applied in this state to invalidate a conviction obtained upon the testimony of an absent paid informer, despite the fact he was extensively cross-examined at the preliminary examination. (People v. Casarez (1968) 263 Cal.App.2d 130, 133-134 [69 Cal.Rptr. 187]; and see People v. Johnson, supra, 68 Cal.2d 646, 658-659.) [fn. 4] In Barber the court expressly stated, "The right to confrontation [conferred by the Sixth Amendment to the United States Constitution] is basically a trial right. It includes both the right to cross-examine and the occasion for the jury to weigh the demeanor of the witness." (390 U.S. at p. 725 [20 L.Ed.2d at p. 260].) In Johnson the highest court of this state stressed this point in holding that Evidence Code section 1235, making prior inconsistent statements of a witness admissible for the truth of the matters therein asserted, when applied to such statements in a criminal prosecution, violates the Sixth Amendment's guarantee of the right of confrontation. *683 The court observed, with respect to Barber, supra, and prior opinions of the United States Supreme Court, "These rulings emphasize the high court's belief in the importance of ensuring the defendant's right to conduct his cross-examination before a contemporaneous trier of fact, i.e., before the same trier who sits in judgment on the truth of the witness' direct testimony as it is spoken from the stand. [Citation.]" 68 Cal.2d at p. 659. Cf. People v. Zurica (1964) 225 Cal.App.2d 25, 33 [37 Cal.Rptr. 118].)
 Although this principle was declared subsequent to the trial of this case, since it raises an objection of constitutional dimensions which, although envisioned, could not properly be supported at the trial, it may be raised and should be considered here. (People v. Casarez, supra, 263 Cal.App.2d 130, 134.) With hindsight it is apparent that the prosecution should have moved for a continuance until the witness returned on December 12th, only two weeks away. [fn. 5] Such a motion, however, would entail a continuance past the 60-day limitation prescribed by section 1382 of the Penal Code. Under the law as it existed at the time of trial, the absence of the witness, whose prior testimony could be used, may not have been good cause for a continuance. There is no assurance that the defendant would have consented to such a delay. Not only was he in jail, unable to make bail, but the refusal to continue would give him the option to get a verdict, possibly favorable, on testimony which was fixed and determined, as has been outlined above, and subject to known contradiction, while reserving his Sixth Amendment objection in the event of an unfavorable decision. On the other hand, if the defendant accepted a continuance he would be able to show the demeanor of the victim, but at the same time the victim would have had the experience of the prior trial as indoctrination for possibly a more impressive appearance. In the event of an adverse verdict, no Sixth Amendment objection would be available.
 In People v. Dozier, supra, the court applied the pre-Barber law and indicated that the existence of permissible legislation to obtain a witness from another state did not require the state to resort to it. (236 Cal.App.2d at p. 105. See also People *684 v. Washington, supra, 248 Cal.App.2d at p. 475.) In Dozier the court further observed, "It is not, of course, the burden of the defendant to secure the presence of the state's witnesses to meet the constitutional requirement of confrontation. But if that right is not denied the defendant because he has in fact cross-examined a witness who then leaves the state, it is still within the power of the defendant to seek, through the machinery provided, the return of the absent witness. The defendant here made no such attempt." (Id) So in this case, under the existing law, and the defendant's existing right to a speedy trial, he could not sit back on his Sixth Amendment objection with the knowledge that the witness would be available in a fortnight without indicating to the court that he desired, or at least would be amenable to, a continuance.
 Barber does not compel a contrary result. In this case the testimony was tested in the crucible of a trial, as distinguished from a preliminary examination. Here the defendant was apprised that the witness would be available in a short time, and the People, in good faith reliance on existing law, proceeded, but did not indicate any unwillingness to use process at a later date to secure his attendance if the defendant had so desired. There was more than the passivity of Barber, although the prosecution's conduct may have fallen short of the diligence now required by that decision. The record demonstrates no serious cognizable inadequacies in the cross-examination to which the prior testimony was subjected. The emphasis in Barber and Johnson on confrontation by the trier of fact must be tempered by the knowledge that the state Constitution authorizes the use of depositions in criminal actions (Cal. Const., art. I, 13; and see Pen. Code, 1335-1345 and 1349-1362; and Evid. Code, 240); that depositions are used every day to determine important factual questions in civil disputes; and that, when the witness is dead or seriously injured there can be no possibility of confrontation by the ultimate trier of fact. (See People v. Zurica, supra, 225 Cal.App.2d 25, 33; and People v. Hernandez, supra, 263 Cal.App.2d 242, 250.) Finally, it may be noted that this case does not involve a denial of the right of the defendant to confront and cross-examine the witness (cf. Smith v. Illinois (1968) 390 U.S. 129, 131 [19 L.Ed.2d 956, 958, 88 S.Ct. 748]), but only a denial of that aspect of the Sixth Amendment right which is said to entitle him to have the trier of fact observe the witness' demeanor as he is subjected to the interrogation. If the governing test of prejudice is that found *685 in Chapman v. California (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824], it may be said that the use of the prior testimony under the circumstances of this case, if error, was "harmless beyond a reasonable doubt."
 Rebuttal testimony
 In rebuttal, the People called Gordon Turner who had acted as a bailiff during part of defendant's first trial. He testified that on September 28, 1966, at the noon recess, he had a conversation with defendant as they were leaving the courtroom, that he wrote down the conversation on the 29th and then turned it over to the district attorney's office after the trial. He testified that he recorded the conversation exactly as it occurred with the exception of one or two descriptive adjectives. Turner testified that defendant said to him: "That Gordon is a liar because he asked me for a woman. What would a man like him be doing down there where the whores are if he didn't want one."
 Called in surrebuttal, defendant testified that he did have a conversation with Turner about Gordon, but denied making the statement attributed to him by Turner. He testified that in the conversation with Turner, Mr. Turner said: " 'I be knowing him. He's a hype from way back. If you ever see a guy with a little beard on his chin, a beard, goatee, in other words, you better stay away from him because he sure will be back down there.' " Defendant denied telling Turner he had seen Gordon or that he had had a conversation with him or that Gordon had asked him for a woman.
 [3] Defendant first contends that the testimony of his admission was improperly admitted because he was not admonished, nor did he expressly waive his right to have counsel present, as required by Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].
 According to Turner, the conversation was initiated by defendant. Even under the interpretation of the evidence most favorable to defendant, all that could be found to indicate a process of interrogation would be a questionary salutation, "How's it going, Ashford?" This setting falls far short of the situation contemplated and interdicted by Miranda and other cases which require a similar foundation as a condition precedent to the use of statements elicited as the result of official interrogation.
 [4] "It is now settled that statements voluntarily made by a suspect while in custody, but not as the result of police *686 interrogation, are admissible in evidence. For example, statements made by a defendant to a cellmate were held admissible in People v. Lookadoo, 66 Cal.2d 307, 323 [57 Cal.Rptr. 608, 425 P.2d 208], and statements made to a television news reporter (People v. Price, 63 Cal.2d 370, 379 [46 Cal.Rptr. 775, 406 P.2d 55]) and to a sound news film reporter (People v. Massie, 66 Cal.2d 899, 909 [59 Cal.Rptr. 733, 428 P.2d 869]) were also held admissible. The courts have even held that statements of a defendant overheard without his knowledge or permission are admissible in evidence. For example, in People v. Bazaure, 235 Cal.App.2d 21 [44 Cal.Rptr. 831]; People v. Boulad, supra [235 Cal.App.2d 118 (45 Cal.Rptr. 104)]; and People v. Ross, 236 Cal.App.2d 364 [46 Cal.Rptr. 41], statements of defendants overheard by the police while listening in on conversations between two or more suspects in adjoining cells were held admissible." (People v. Petker (1967) 254 Cal.App.2d 652, 654 [62 Cal.Rptr. 215]. See also People v. Charles (1967) 66 Cal.2d 330, 342-343 [57 Cal.Rptr. 745, 425 P.2d 545]; People v. Cotter (1965) 63 Cal.2d 386, 392- 393 [46 Cal.Rptr. 622, 405 P.2d 862]; People v. Hodge (1967) 249 Cal.App.2d 659, 661-662 [57 Cal.Rptr. 729]; and People v. Garner (1965) 234 Cal.App.2d 212, 225 [44 Cal.Rptr. 217] [judgment vacated and remanded (1967) 386 U. S. 272 [18 L.Ed.2d 41, 87 S.Ct. 1033], reinstated (1968) 258 Cal.App.2d 420, 432 [65 Cal.Rptr. 780], disapproved on other grounds People v. Rivers (1967) 66 Cal.2d 1000, 1005 [59 Cal.Rptr. 851, 429 P.2d 171]].)
 [5] Defendant also contends that it was improper to admit the testimony of his statement because no foundation had been laid for impeachment by asking the defendant, when he testified, whether he had made the statement attributed to him. (See Code Civ. Proc., former 2052; and People v. Angelopoulos (1939) 30 Cal.App.2d 538, 548-549 [86 P.2d 873] [disapproved on other grounds People v. Wilson (1963) 60 Cal.2d 139, 152 [32 Cal.Rptr. 44, 383 P.2d 452]]; and cf. Evid. Code, 770.)
 "Declarations and statements made by the defendant are original evidence against him, and the rules as to the impeachment of witnesses do not apply to the proof thereof, even if he takes the stand in his own defense." (People v. Morley (1928) 89 Cal.App. 451, 461 [265 P. 276]. See also People v. Burch (1961) 196 Cal.App.2d 754, 770 [17 Cal.Rptr. 102]; 4 Wigmore, Evidence, 1051, pp. 8-10; McCormick, Evidence, 37, pp. 69-70.) The exclusionary ruling in Angelopoulos, *687 supra, can only be explained as an oversight or failure to comprehend and properly advance the correct theory of admissibility.
 [6] Finally, defendant contends it was improper to receive the testimony of the bailiff on rebuttal, as distinguished from receiving it as a part of the prosecution's case in chief.penal Code section 1093, subdivision 4, provides in part, "the parties may then respectively offer rebutting testimony only, unless the court, for good reason, in furtherance of justice, permit them to offer evidence upon their original case."
 In People v. Carter (1957) 48 Cal.2d 737 [312 P.2d 665], the court held, "In a sense all evidence that tends to establish the defendant's guilt over his protestations of innocence rebuts the defendant's case, but it is not all rebuttal evidence within the purpose of section 1093 ... The purpose of the restriction in that section is to assure an orderly presentation of evidence so that the trier of fact will not be confused; to prevent a party from unduly magnifying certain evidence by dramatically introducing it late in the trial; and to avoid any unfair surprise that may result when a party who thinks he has met his opponent's case is suddenly confronted at the end of trial with an additional piece of crucial evidence. Thus proper rebuttal evidence does not include a material part of the case in the prosecution's possession that tends to establish the defendant's commission of the crime. It is restricted to evidence made necessary by the defendant's case in the sense that he has introduced new evidence or made assertions that were not implicit in his denial of guilt. ... A defendant's reiterated denial of guilt and the principal facts that purportedly establish it does not justify the prosecution's introduction of new evidence to establish that which defendant would clearly have denied from the start." (Pp. 753-754.)
 People v. Rodriguez (1943) 58 Cal.App.2d 415 [136 P.2d 626] holds "The practice of allowing the district attorney to withhold a part of his case in chief and to offer it after the defense has closed cannot be approved, ..." (P. 419.)
 The prosecution asserts that the evidence was proper rebuttal because defendant's denial of guilt did not necessarily encompass the proposition that he had not seen or conversed with Gordon on the evening in question. When the defendant so testified it was proper to admit the admission which tended to prove that he had conversed with Gordon. (See People v. Whitehorn (1963) 60 Cal.2d 256, 263 [32 Cal.Rptr. 199, 383 *688 P.2d 783]; People v. Harrison (1963) 59 Cal.2d 622, 628-630 [30 Cal.Rptr. 841, 381 P.2d 665]; People v. Alvarez (1963) 212 Cal.App.2d 406, 408-409 [28 Cal.Rptr. 141].)
 This argument fails to meet the contention that the prosecution must have known from the defendant's testimony at the first trial that he would deny seeing or conversing with Gordon. The defendant accuses the prosecution of withholding the evidence until rebuttal for the sole purpose of magnifying it and dramatizing it as late in the trial as possible in order to unduly influence the jury. The objection was fully presented to and overruled by the trial court. Inquiry is, therefore, directed to the question of whether the court abused its discretion in permitting the introduction of evidence which properly should have been a part of the prosecution's case in chief, and, if so, whether the error was prejudicial.
 Although not offered for impeachment, the evidence of defendant's prior statement was impeaching, as well as an admission establishing the fact admitted by the party. If a proper foundation had been laid under former section 2052 of the Code of Civil Procedure, or if the case had been tried after January 1, 1967 (see Evid. Code, 770), the testimony would have been admissible at the time it was offered for the purpose of impeaching the defendant. In view of these circumstances, it cannot be said that the court abused its discretion to regulate the order of proof in permitting the evidence to be introduced when it was.
 The same considerations apply to the question of prejudice, if error was in fact committed. Defendant points out that one of two questions addressed to the court by the jurors dealt with Turner's testimony, and that, therefore, it must have had great significance with the jury. He also asserts that when considered with the absence of Gordon, the tactics of the prosecutor tended to reduce the case to a contest between the veracity of the defendant and the veracity of Turner, rather than a weighing of the testimony of the former as against that of Gordon. Reflection indicates that all evidence tending to establish guilt is prejudicial to the defendant's plea of innocence. The question is whether it was presented in such a manner that it confused the triers of fact, became unduly magnified or caused undue surprise. (See People v. Carter, supra, 48 Cal.2d 737, 753-754.) The record reflects that following examination and cross-examination of Turner, the court granted an early noon adjournment at the request *689 of the prosecutor. The defendant had ample time to marshal his surrebuttal, and did so by recalling the witness for further cross-examination when court reconvened, and by taking the witness stand and giving his own version of the conversation. There was no confusion, or surprise which precluded the defendant from meeting this testimony, and it does not appear that the evidence would have assumed less importance if it had been offered at the end of the People's case in chief instead of in rebuttal.
 No prejudicial error is found in the admission of the bailiff's testimony regarding the defendant's admission.
 The judgment is affirmed.
 Molinari, P. J., and Elkington, J., concurred.
NOTES
[fn. 1] 1. The confrontation and trial of this case all occurred prior to the decision in United States v. Wade (1967) 388 U.S. 218, 237 [18 L.Ed.2d 1149, 1163, 87 S.Ct. 1926]. Therefore no objection can be predicated upon the failure to have counsel representing defendant present at a subsequent lineup. (Stovall v. Denno (1967) 388 U.S. 293, 296 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967]; People v. Feggans (1967) 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21].) Defendant has not claimed that the identification procedure "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." (Stovall v. Denno, supra, 388 U.S. at p. 301 [18 L.Ed.2d at p. 1206]. See also People v. Caruso (1968) 68 Cal.2d 183, 185-187 [65 Cal.Rptr. 336, 436 P.2d 336]; People v. Harris (1967) 67 Cal.2d 866, 872 [64 Cal.Rptr. 313, 434 P.2d 609]; People v. Feggans, supra, at p. 449; People v. Romero (1968) 263 Cal.App.2d 590, 593 [69 Cal.Rptr. 748]; People v. Blackburn (1968) 260 Cal.App,2d 35, 43 [66 Cal.Rptr. 845]; People v. Slutts (1968) 259 Cal.App.2d 886, 891 [66 Cal.Rptr. 862]; People v. Smith (1968) 259 Cal.App.2d 814, 819 [66 Cal.Rptr. 551]; and People v. Douglas (1968) 259 Cal.App.2d 694, 697 [66 Cal.Rptr. 492].) Because the trial antedated the rulings in Wade and Stovall, the question is reviewable, despite failure to present an objection in the trial court. (People v. Doherty (1967) 67 Cal.2d 9, 14-15 [59 Cal.Rptr. 857, 429 P.2d 177]; People v. Kitchens (1956) 46 Cal.2d 260, 262-263 [294 P.2d 17]; People v. Blackburn, supra, at p. 43; People v. Douglas supra, at pp. 696-697.) A conscientious reading of the record, in which the defendant amply explored the identification procedure, fails to reveal any such unfairness as infringed defendant's right to due process of law. (See Stovall v. Denno, supra, at p. 299 [18 L.Ed.2d at pp. 1204-1205]; People v. Caruso, supra, at p. 186, and cases cited, supra.)
[fn. 2] 2. See footnote 1, supra.
[fn. 3] 3. This conclusion should not go unchallenged to become part of the appellate dogma concerning proceedings in the lower courts. Many magistrates have faced the problem of having skilled and adept defense counsel attempt to turn the preliminary hearing into full scale discovery proceedings, even to the extent of subpoenaing all of the officers and possible hostile witnesses involved.
[fn. 4] 4. In People v. Carswell (1959) 51 Cal.2d 602 [335 P.2d 99], the court stated, "Where the evidence is sufficient to show that the witness is absent from the state, the due diligence requirement is inapplicable. [Citations.]" and "To hold, as defendant argues, that there must also be a showing of due diligence to keep the witness within the state, would be contrary to the plain terms of [Penal Code] section 686 and would work an unreasonable hardship on the party seeking to introduce such testimony." (Id., pp. 605-606.) These statements, and the cases following and applying them (see cases cited p. 6, supra), must be reevaluated and are of questionable precedent in the light of Barber v. Page (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318].
[fn. 5] 5. The prosecution's communications with the victim were designed to satisfy existing law, and establish that the witness was out of the state and would be so at the time of trial. Whether the witness would have cut short his trip, if requested to do so, cannot be now reconstructed. It is obvious that resort to any interstate process probably would have involved a period of time extending beyond the date of the witness' return.