[Crim. No. 6620.   First Dist., Div. Two.   Sept. 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ELBERT EARL WILLIAMS, Defendant and Appellant.

Kelvin L. Taylor, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci, and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—Defendant appeals following jury conviction of first degree murder. (Pen. Code, §§ 187, 189.) In an unpublished opinion (1 Crim. No. 4705) a prior first degree murder conviction was reversed on *Dorado* grounds. (*People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].) Appellant was 17 years of age at the time of the murder and therefore the death penalty could not be imposed. (Pen. Code, § 190.1.) No contention is made that the evidence is not sufficient to support the judgment.

## FACTS

Clyde Sherman testified that on September 13, 1963, about 1:30 a.m., he looked out from the window of his third floor room in a hotel located on the southeast corner of 16th and Grove Streets, Oakland, to the northeast corner of the intersection. There he saw a man lying prostrate on the sidewalk. One male Negro was standing beside his body and another male Negro was crouched down over him, rifling his pockets. Once, when the victim raised his head a few inches, the standing Negro viciously kicked him in the head.

A male voice coming from the hotel yelled " 'Hold it' " and the two assailants ran down 16th Street. A few minutes later Sherman saw an automobile containing four persons drive up. Two "colored" persons, not the assailants, got out and went over to where the victim was lying on the sidewalk.

In what Sherman described as a "female voice," one of them said, " 'Yes, he is conscious.' " The two then got back in the car, which was driven off rapidly.

Police Officer Smith arrived immediately after. The victim was lying in a pool of blood, one eye was dislodged from its socket, and he was bleeding profusely from the head. He died at 2 a.m. The officer noted that the victim had no money on his person, his pockets had been turned out, and his shoes had been removed.

The autopsy surgeon attributed the death to shock and hemorrhage resulting from head injuries. There were twelve external wounds which, except one, could have been caused by blows from fists and feet. The exception was a 1½ inch cheek wound, which could have been inflicted with a crowbar.

At 2:20 a.m., Police Officer Beltramini stopped a car two miles from Grove and 16th Streets. It was driven by one Tyler. Appellant and one Keith Williams (hereafter "Keith") were occupants.

The prosecution called Sylvia Grogans. The trial judge upheld her invocation of the self-incrimination privilege. On motion of the prosecutor, her testimony at the first trial was read into the record by the official court reporter who had reported it.

Sylvia had testified that on September 13, 1963, about 12:30 a.m., she was riding in Tyler's car with him, appellant, Keith and one Sandra London. Appellant and Keith got out of the car near 16th Street in Oakland, stating that they needed money and were going to the nearby laundromat. Appellant took a crowbar with him. The two returned in about 45 minutes. Appellant said, " 'I think we killed that man.' " Appellant asked Keith why he had removed the victim's shoes and Keith replied, " 'Sometime they keep money in their shoes.' " The crowbar had been left behind and Sylvia and Sandra got out of the car to look for it. When they came upon the victim and saw his condition they abandoned the search and ran back to the car, which was then driven away rapidly.

Sandra corroborated Sylvia's testimony in all material respects and a detailed statement thereof is unnecessary.

In addition, Mrs. Ida Mae Johnson testified that she saw Keith and appellant, the latter carrying a long object up his sleeve, at the Grove Street laundromat on the murder date at approximately 1 a.m. An old man walked by the laundromat at about 1:15 a.m. Appellant and Keith followed him around the corner. Mrs. Johnson then heard several cries for help, and next saw appellant and Keith running.

The only evidence offered by the defense was appellant's own testimony. He testified that on the day in question he had been drinking heavily. He admitted accompanying Keith to the laundromat, but denied taking any part in the attack upon the victim. Instead, he claimed to have unsuccessfully attempted to stop Keith's attack upon the victim.

### DID THE ADMISSION IN EVIDENCE OF SYLVIA'S PRIOR TESTIMONY DENY APPELLANT HIS CONSTITUTIONAL RIGHT OF CONFRONTATION?

Penal Code section 686, subdivision 3, provides in pertinent part that in a criminal action, the defendant is entitled "to be confronted with the witnesses against him, in the presence of the court, except that: (a) Hearsay evidence may be admitted to the extent that it is otherwise admissible in a criminal action under the law of this state." (As amended Stats. 1965, ch. 299, p. 1368, § 139, operative Jan. 1, 1967.)

The Evidence Code became operative on January 1, 1967 and governs "further proceedings in actions pending on that date." (Evid. Code, § 12.) " 'Action' includes a civil action and a criminal action." (Evid. Code, § 105.) The retrial herein was commenced on May 4, 1967, and is therefore governed by the Evidence Code. (*People* v. *Doherty* (1967) 67 Cal.2d 9, 21, fn. 9 [59 Cal.Rptr. 857, 429 P'.2d 177].)

Evidence Code section 1291 provides in part that "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is *unavailable as a witness* and . . . [t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing." (Italics added.)

Evidence Code section 1290, subdivision (a), defines "former testimony" to include testimony given under oath in a former trial of the same action.

Evidence Code section 240, so far as pertinent herein, provides that a declarant who is " [e]xempted or precluded on the ground of privilege from testifying concerning the matter to which his statement is relevant" is "unavailable as a witness." In other words, a witness whose *testimony* is not available, even though he is present at the trial, is "unavailable as a witness" within the meaning of Evidence Code section 1291. (Cf. *Johnson* v. *People* (1963) 152 Colo. 586 [384 P.2d 454].)

It is clear that, under the above provisions of the Evidence

Code, the testimony of the witness Sylvia at the prior trial became admissible in evidence at the retrial upon her becoming "unavailable as a witness" by invoking the self-incrimination privilege. Appellant does not argue to the contrary.

Appellant's contention is that the foregoing statutory rule of evidence violates his constitutional right of confrontation as guaranteed by Amendment VI of the United States Constitution, which provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; . . ."

Appellant relies upon *Pointer* v. *Texas* (1965) 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065], and *Douglas* v. *Alabama* (1965) 380 U.S. 415 [13 L.Ed.2d 934, 85 S.Ct. 1074].

In the first case, Pointer and another were charged with robbery. At the preliminary hearing, in response to the prosecutor's questions, one Phillips testified in detail, identifying Pointer as the man who had robbed him at gunpoint. Both defendants were laymen and neither was represented by counsel. Pointer did not attempt to cross-examine Phillips.

Some time before the trial was held, Phillips left Texas and became a permanent resident of California. After proving this, the prosecution was allowed to put in evidence the transcript of Phillips' testimony given at the preliminary hearing.

In reversing Pointer's conviction, the court stated: "[A] major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him. [Citations.] . . . Because the transcript of Phillips' statement offered against petitioner at his trial had not been taken at a time and under circumstances affording petitioner through counsel an adequate opportunity to cross-examine Phillips, its introduction . . . against P'ointer would have amounted to denial of the privilege of confrontation guaranteed by the Sixth Amendment. . . . [I]t follows that use of the transcript to convict petitioner denied him a constitutional right, and that his conviction must be reversed." (380 U.S. 406-408 [13 L.Ed.2d 927-929].)

In *Douglas* v. *Alabama, supra,* 380 U.S. 415, the petitioner and one Loyd were tried separately for assault to commit murder. The weapon used was a shotgun. Loyd was tried first and was found guilty. The prosecutor called Loyd as a witness at the subsequent trial of petitioner. Loyd's appeal from his conviction was pending and he invoked the privilege

against self-incrimination. The court granted the prosecutor's motion to declare Loyd a "hostile witness." The prosecutor then produced a purported written confession by Loyd and, under the guise of cross-examination to refresh his recollection, read a few sentences at a time therefrom and then paused to ask Loyd, " 'Did you make that statement?' "

Loyd continued to invoke the privilege and refused to answer. However, the prosecutor continued with this form of questioning until the entire writing had been read before the jury. The prosecutor then called three law enforcement officers who identified the writing as a confession made and signed by Loyd. The writing named the petitioner as the one who actually fired the shotgun.

Petitioner's conviction was reversed, the court stating: "In the circumstances of this case, petitioner's inability to cross-examine Loyd as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause." (380 U.S. at p. 419 [13 L.Ed.2d at p. 937].)

It is apparent that in both *Pointer* and *Douglas, supra,* the respective convictions were reversed because the accused had not been given an adequate opportunity to effectively cross-examine a witness making an accusation against him.

In *Pointer,* the accused had *physically* confronted the alleged robbery victim at the preliminary hearing but, being a layman and without counsel, had not had the opportunity of *effective* cross-examination.

In *Douglas,* the accused was physically present when his accuser, Loyd, was on the witness stand but, as we have seen, his counsel did not have an opportunity to cross-examine Loyd because the latter refused to answer any questions.

That is not the situation here. Appellant's counsel, an able and distinguished trial lawyer, cross-examined witness Sylvia thoroughly at the first trial. Her cross-examination and recross-examination fill over 26 pages of the reporter's transcript, whereas the direct and redirect examination fill only 20 pages.

As the United States Supreme Court said in *Pointer*: "[A] major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him. [Citations.] This Court has recognized the admissibility against an accused of dying declarations [citation], and of testimony of a deceased witness who has testified at a former trial [citations]. Nothing we hold here is to the contrary. *The case before us would be*

*quite a different one had Phillips' statement [testimony] been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine.* [Citation.] *There are other analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses.*" (Italics added; 380 U.S., at pp. 406-407 [13 L.Ed.2d at pp. 927-928].)

Penal Code section 686, prior to January 1, 1967, provided in part that the prior testimony of a witness in a criminal action, given at the preliminary examination, or in a deposition, or at a former trial of the same action, was admissible in evidence if such witness had died or become insane or could not with due diligence be found within the state *and,* at the time such testimony was given, the defendant or his counsel cross-examined or had an opportunity to cross-examine such witness.

As of January 1, 1967 the foregoing rule was deleted from Penal Code section 686 and transferred in broader terms to Evidence Code section 1291. Our appellate courts have consistently held that this rule is not violative of the confrontation clause contained in the Sixth Amendment to the United States Constitution. (*People* v. *Dozier* (1965) 236 Cal.App.2d 94 [45 Cal.Rptr. 770]; *People* v. *Banks* (1966) 242 Cal.App. 2d 373 [51 Cal.Rptr. 398], cert. den. 386 U.S. 923 [17 L.Ed.2d 794, 87 S.Ct. 891]; *People* v. *Dinkins* (1966) 242 Cal.App.2d 892 [52 Cal.Rptr. 134]; *People* v. *Washington* (1967) 248 Cal.App.2d 470 [57 Cal.Rptr. 487]; *People* v. *Haney* (1967) 249 Cal.App.2d 810 [58 Cal.Rptr. 36].)

These cases were decided subsequent to *Pointer* and *Douglas*. In each it was pointed out that the witness whose prior testimony was admitted in evidence at the trial had been confronted by the defendant at the preliminary hearing and had been adequately and effectively cross-examined thereat by defendant's counsel. Each case holds that *Pointer* and *Douglas* are distinguishable on this ground.

When the Supreme Court in *Pointer* said that, "There are other analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses" (380 U.S. at p. 407 [13 L.Ed.2d at p. 928]), it is reasonable to assume that it had in mind the various situations which had come before the courts on previous occasions.

The following statement is made in a 1956 article in American Law Reports, Annotated: "Use of testimony given by a witness at a former trial or preliminary examination of a

defendant on trial is generally held permissible, even though the witness is present in court at the later trial, if the witness invokes a claim of privilege and refuses to testify.'' (45 A.L.R.2d 1355.) Then follows a discussion of cases bearing upon the subject.

Appellant points out that the procedure followed herein with respect to Sylvia's prior testimony deprived the jury in the instant trial of the opportunity to observe her demeanor on the witness stand.

This aspect is discussed in Wigmore on Evidence, as follows: ''It is generally agreed that the process of confrontation has two purposes, a main and essential one, and a secondary and dispensable one: (1) The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.* . . . (2) There is, however, a secondary advantage to be obtained by the personal appearance of the witness; the *judge* and the *jury* are enabled to obtain the elusive and incommunicable evidence of a *witness' deportment while testifying,* and a certain subjective moral effect is produced upon the witness. . . . In other words, this secondary advantage is a result accidentally associated with the process of confrontation, whose original and fundamental object is the opponent's [accused's] cross-examination.

''The question, then, whether there is a right to be confronted with opposing witnesses is essentially a question whether there is a right to cross-examine. If there has been a Cross-examination, there has been a Confrontation. The satisfaction of the right of Cross-examination . . . disposes of any objection based on the so-called right of Confrontation.'' (5 Wigmore on Evidence (3d ed.) §§ 1395, 1396.)

In *McBride* v. *State* (Alaska 1962) 368 P.2d 925, cert. denied (1963) 374 U.S. 811 [10 L.Ed.2d 1035, 83 S.Ct. 1702], an electronic recording of testimony given at a former trial was played for the jury at a later hearing. The declarant, who did not appear, had been cross-examined during the initial proceeding. Since the opportunity for cross-examination had been preserved, it was held that there was no violation of the right of confrontation. Demeanor evidence, the court said, is ''merely desirable; it is not indispensable and may be dispensed with in cases where the witness is unavailable.''

We have concluded that the appellant's right of confrontation under the Sixth Amendment and Penal Code section 686, subdivision 3, was not violated.

Appellant also calls attention to appellant's change of

counsel between the first and second trials and that the "overall trial strategy of defense counsel . . . may vary considerably from one trial to another." His counsel states that such variance is less likely to occur when the testimony read into evidence is taken from the preliminary hearing transcript. (The only California case involving testimony which was given at a former trial is *People* v. *Reese,* 136 Cal.App. 657 [29 P.2d 450]; all of the other cases in point involve testimony given at preliminary hearings.)

Appellant's argument seems to be that the reversal on appeal of his prior conviction, holding that his confession was not admissible, "may well have caused a change in strategy on the part of trial counsel as to the method of cross-examining, . . ."

We are not persuaded that the foregoing speculations constitute any reason for not following the rule of evidence established by the Evidence Code. We also note that, although the Constitution preserves to a defendant the opportunity for cross-examination by *competent* counsel, it does not require that it be by currently retained counsel.

Next, appellant argues that the district attorney should have initiated proceedings under Penal Code section 1324 to grant Sylvia immunity, thus making her available as a witness. We know of no authority which requires a district attorney to take such action.

### Was Appellant Denied Due Process by Admission of Sylvia's Prior Testimony, Given Without Miranda Warnings?

Appellant argues that his right of due process was denied by the admission of Sylvia's former testimony. He claims that such testimony was given without an admonition of her constitutional rights as required by the decisions in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361]; and *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. He asserts that her testimony given at the former trial, absent such constitutional warnings, may not be admitted against him upon retrial.

This argument is meritless for two reasons. First, appellant has no standing to assert Sylvia's constitutional right to the admonitions required by those decisions. "[T]he Fifth and Sixth Amendment rights protected by *Escobedo, Dorado,* and *Miranda* are violated only when evidence obtained without the

required warnings and waiver is introduced against the person whose questioning produced the evidence." (*People* v. *Varnum* (1967) 66 Cal.2d 808, 812 [59 Cal.Rptr. 108, 427 P.2d 772].) Accordingly, there is no basis for excluding evidence acquired in violation of those rights "when such evidence is offered at the trial of another person." (*Id.*, at p. 813.)

Secondly, the *Dorado, Escobedo* and *Miranda* requirements apply to extrajudicial statements which are the product of police interrogations (*Escobedo* v. *Illinois, supra,* at pp. 490-491 [12 L.Ed.2d at pp. 985-986] ; *People* v. *Dorado, supra,* at pp. 353-354; *Miranda* v. *Arizona, supra,* at pp. 478-479 [16 L.Ed.2d at pp. 725-727].) Those cases introduced protective devices to dispel the compelling atmosphere of the police interrogation (see *Miranda* v. *Arizona, supra,* at pp. 458, 465 [16 L.Ed.2d at pp. 714, 718]). Sylvia's testimony at appellant's initial trial was not the product of police custodial interrogation, and the danger of inherently coercive conditions does not exist in open court. Therefore, the constitutional requirements enunciated in the above-cited cases are inapplicable here.

### ALLEGED ERROR IN PERMITTING SYLVIA TO ASSERT SELF-INCRIMINATION PRIVILEGE IN JURY'S PRESENCE

Appellant argues that it was prejudicial error to permit Sylvia to claim her Fifth Amendment privilege in the presence of the jury.

After stating that she was 20 years of age and had been riding with others in a 1957 Plymouth at the approximate time and place of the commission of the offense charged against appellant, the trial judge interrupted the questioning and advised Sylvia of her self-incrimination privilege.

The trial judge declared a recess, stating that the matter would be discussed outside the presence of the jury. The court appointed an attorney to act as counsel for Sylvia. At the conclusion of a lengthy discussion between court and counsel, Sylvia's attorney stated that she intended to claim the privilege. The court then said: "Very well then, Gentlemen. We will proceed to the point where as the Court now indicates, the witness Sylvia Grogans will be sustained in her present position of claiming the privilege if any answer might incriminate her." The jury was then called back and Sylvia resumed the stand.

The prosecutor then asked her only four questions, to each of which she asserted her self-incrimination privilege. The

first question had already been asked and answered before the recess. The second question was whether appellant and Keith were in the car in which she was riding, the third was whether she was in this car when Tyler parked it in front of a cab company on 16th Street, and the fourth was whether appellant and Keith had gotten out of the car after it had been parked.

The court then ruled that Sylvia was not required to answer these questions and she was excused as a witness. No objection was made at any time to the foregoing procedure.

Now, on appeal, appellant contends for the first time that it was improper for the prosecutor to put Sylvia back on the witness stand because he already knew what the court's ruling would be. Appellant states that "the proper procedure was to offer to prove the prior testimony by means of the court reporter at the first trial."

■ We think the following principle applies: "A defendant may be precluded from raising an error as a ground of appeal where, by conduct amounting to acquiescence in the action taken, he waives the right to attack it." (Witkin, Cal. Criminal Procedure (1963) § 747, p. 721.)

■ Appellant's counsel well knew how the court intended to rule. If he felt that the foundation for the introduction of Sylvia's testimony at the prior trial should be laid by the prosecutor out of the presence of the jury, he had ample opportunity to make his view known to the court, either by objection or motion. He chose not to do so and remained silent while the four foundational questions were asked in the presence of the jury.

Moreover, whether Sylvia resumed the stand or not, if she did not give any more testimony the jury could only conclude that she had availed herself of the privilege which the trial judge had explained to her in the presence of the jury, just before the recess was taken.

The asking of the four questions after the recess could not have prejudiced appellant. Sylvia had answered them in the prior trial *exactly as did appellant in his testimony*. That is, (1) that on September 13, 1963, shortly after midnight, she was in the vicinity of 16th and Brush Streets, in Oakland; (2) that at the time and place she was in an auto in which appellant and Keith were also occupants; (3) that the auto was driven by Don Tyler and he parked it in front of a cab company at 16th and Brush Streets; and (4) that at such time and place appellant and Keith got out of the auto.

This is not a situation where the prosecutor is attempting to

get before the jury insinuations that, if the witness were required to answer, the answers would incriminate the defendant.

We cannot see how or in what manner the appellant was prejudiced by the asking of the four questions in the presence of the jury.

## SPEEDY RETRIAL

For the first time, appellant now complains that he was denied his right to a speedy retrial. This right may be waived.

Our Supreme Court held, in *People* v. *Wilson* (1963) 60 Cal.2d 139, 146 [32 Cal.Rptr. 44, 383 P.2d 452]: "The right to a speedy trial must therefore be asserted, if at all, in the court where the prosecution is pending, and prior to the commencement of trial. [Citation.] It is too late to raise the point for the first time on appeal [citations]; . . . The right to a speedy trial, furthermore, will be deemed waived unless the defendant *both* objects to the date set *and* thereafter files a timely motion to dismiss."

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 20, 1968.