[Civ. No. 1374. Fifth Dist. Dec. 31, 1970.]

In re MARSHALL K., a Person Coming Under the Juvenile Court Law.
RONALD M. LEACH, JR., as Probation Officer, etc.,
Plaintiff and Respondent, v.
MARSHALL K., Defendant and Appellant.

## COUNSEL

Carlyle J. Mills for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Marjory Winston Parker, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE, P. J.**—Marshall K., a minor, was brought before the juvenile court by petition alleging him to be within the provisions of section 602 of the Welfare and Institutions Code, in that he possessed marijuana in violation of section 11530 of the Health and Safety Code. The allegations of the petition were found to be true, and he was released to the custody of his parents. He has appealed upon three grounds: first, that the search of his automobile was made without probable cause, from which it follows that the products of the search were illegally seized; second, that an occupant of the car, a minor, whom he called as a defense witness, was improperly permitted to invoke his right under the Fifth Amendment not to answer certain questions; third, that the record does not reflect that the juvenile court judge found the allegations of the petition to be true beyond a reasonable doubt as required by the United States Supreme Court in *In re Winship,* 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068].

The Attorney General concedes *Winship* error, but the other two grounds of appeal are sharply contested.

The facts surrounding the search and seizure are as follows: About 8:05 p.m. on October 20, 1969, an officer in the City of Exeter observed a Falcon automobile occupied by the driver and three passengers. Appellant was the driver, a girl was in the middle of the front seat, Timothy Gentry was on the passenger side, and John Gauntt was alone in the rear seat. The officer noticed that the light over the license plate was out, so he drove his car in behind appellant's car, turned his headlights to high beam, switched on the red light, and followed the car until it stopped. While the driver was slowing to a stop, the officer observed Gentry turn around, look out the back window, turn back toward the front and bend over, wriggling his shoulders, then raise up and put his right hand to the top of the sun visor, which he pulled down part way, pushed it back up, and removed his hand. To the officer it appeared as though Gentry might be hiding liquor, a weapon, or contraband material.

The officer walked to the driver's side of the car and asked the driver

for his license, which he produced. The officer leaned down, shined his flashlight into the car, and recognized Gentry, whom he had seen before and who, he had heard, was involved in the traffic of narcotics. He recognized Marshall's name, and recalled that he had allegedly been involved in narcotics by two written statements given by third parties who were charged with possession of marijuana. The officer asked Gentry if he had hidden anything on the sun visor, and Gentry replied, "No." When the officer asked why he had bent over and then put his hand on top of the sun visor, Gentry replied, "I didn't even touch the sun visor." Appellant volunteered, "That's right, he didn't touch it." The officer walked around the vehicle, asked Gentry to step out of the car, and pulled down the sun visor, from which plastic bags containing marijuana, a package of cigarette papers and a matchbox bearing the legend "smoke pot" fell down. The other occupants were ordered out of the car, and all four were placed under arrest.

After a back-up unit arrived, the officer found a bag containing marijuana in appellant's pocket. He noticed the rear seat was not in its proper position, and observed the tip of a plastic bag protruding from the opening between the cushion and the back of the seat. He found two large plastic bags, each containing 10 smaller bags of marijuana, under the back cushion. The next day he found a marijuana roach on the dashboard of the car.

Appellant does not deny that the officer had a right to stop his vehicle for a traffic violation; rather, he contends the officer had no probable cause to search the car after stopping it. To the extent probable cause rests upon the credibility of the police officer's testimony, we must accept the factual determination of the trial judge who observed the witnesses, since the testimony is not so improbable as to be entirely unworthy of belief. As to this issue, the trial court's resolution of conflicts in the evidence is also binding upon this reviewing court. (See *People* v. *Stroud,* 273 Cal. App.2d 670, 676 [78 Cal.Rptr. 270].) With this is mind, we turn to the circumstances surrounding the arrest.

The officer testified that he followed the car and as it drew to a stop the passenger, Gentry, leaned over, then reached up, lowered the sun visor, and pushed it back up. This alone probably would not justify an officer in reaching into the car and pulling down the sun visor. Even though it was dark and there was no need for it in its normal use, the officer stated that people do place cigarette packages, candy bars and similar materials above the sun visors. He thought, however, that it was possible Gentry might be placing a gun or contraband there. His suspicions naturally were aroused because it was only after the officer had turned on the red light that Gentry made suspicious movements and manipulated the sun visor. To further

his suspicions, both Gentry and appellant denied that Gentry had touched the sun visor. The officer testified that after he walked to the car he recognized the passenger, Gentry, and recalled that the name of appellant driver had appeared in police reports made in connection with arrests of third persons involved in narcotic violations. He said that from a number of people he had understood that Gentry and appellant had been involved in narcotics transactions. These reports had come to his attention just a few weeks before he stopped the vehicle. (*People* v. *Barrett,* 2 Cal. App.3d 142, 149 [82 Cal.Rptr. 424].)

■ It appears to us that the officer had probable cause to check the sun visor when the circumstances are considered in their totality, namely, the furtive movements by Gentry after the red light was flashing, the denial of such movements by Gentry and appellant, recognition of appellant, by name, and Gentry as persons mentioned in narcotics violations, and the fact that the car could be driven away before a search warrant could be obtained. (*People* v. *Barrett, supra,* 2 Cal.App.3d 142, 146.) ■ Lowering the sun visor exposed the marijuana, which justified the arrest and the further search of the car. It follows that the bag of marijuana found in appellant's pocket, upon search after arrest, was properly received in evidence.

■ There remains appellant's contention that he was deprived of a fair trial by the court's ruling that Gentry, who was called as a witness by appellant, could exercise his Fifth Amendment privilege not to testify on the ground that his testimony might tend to incriminate him. As a result of the search and arrest described above, Gentry was charged with possession of marijuana, and the judge, noting that he was a juvenile and the subject of similar proceedings, refused to permit him to testify until his attorney was present. ■ It is not clear whether appellant includes in his fair-trial argument this ruling of the juvenile court judge but, if so, the argument is without merit. Gentry, as a juvenile charged with crime, was entitled to be represented by counsel (*In re Gault,* 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]) and, a fortiori, he was entitled to the advice of counsel before giving testimony that might tend to incriminate him when called as a witness in another case involving the same transaction.

■ Appellant argues that a defendant in a criminal action should be entitled to require the state to grant immunity to a witness who has knowledge of the facts of his case, to insure him a fair trial. The cases hold that the state is under no obligation to make a witness available to testify for a defendant, or on behalf of the People for that matter, by granting him immunity from prosecution. (*People* v. *Stewart,* 1 Cal.App.3d 339, 343 [81 Cal.Rptr. 562]; *People* v. *Randolph,* 4 Cal.App.3d 655, 660 [84 Cal.

Rptr. 559]; *People* v. *Williams,* 265 Cal.App.2d 888 [71 Cal.Rptr. 773]; *People* v. *Bernal,* 254 Cal.App.2d 283, 294 [62 Cal.Rptr. 96].)

■ Appellant argues that the trial court also erred in the procedure followed in permitting the witness to exercise his right not to testify. At the outset there was a colloquy between court and counsel as to the proper method for the minor to assert this constitutional right. It was agreed that Gentry could not refuse to testify at all, as can a defendant in a criminal action, but that he must take the stand and assert the right in response to each question as it is asked. This method is correct, of course, because until a question is asked there is no way of determining whether the answer will tend to incriminate the witness.

Appellant argues that under this procedure there was error as the witness's attorney was permitted to determine whether the answer to a particular question might tend to incriminate the witness. The record reflects that Gentry's attorney instructed him to not answer certain questions, and when it was readily apparent to the trial judge that the evidence might tend to incriminate the witness, he ordered the witness to not answer in accordance with the attorney's admonition. Where the tendency to incriminate was not readily apparent, the judge permitted counsel for each side to express his views on the matter. After hearing all that was offered as to each question, the judge instructed the witness whether or not to answer. ■ This accords with the spirit of Evidence Code section 404, and the only erroneous ruling we find relates to a question by which Gentry was asked to demonstrate his position as he sat in the car. His counsel objected that it might tend to incriminate him, advised the witness not to demonstrate, and the court approved by saying, "So instructed." ■ Appellant argues, correctly, that the privilege against self-incrimination applies to only testimonial compulsion and not to demonstrative evidence. As the Supreme Court said, in *People* v. *Lopez,* 60 Cal.2d 223, at page 244 [32 Cal.Rptr. 424, 384 P.2d 16]: "There is no indication, on the record before us, that defendants made or were asked to make any statements that would tend to incriminate them. The privilege extends only to testimonial compulsion; requiring defendants to assume a certain pose for purposes of identification, or to speak for voice identification, is not within the privilege. [Citations.] Even in the courtroom during trial a defendant may be required to stand and remove a visor so that witnesses attempting to identify him (or, presumptively exonerate him) may have an unobstructed view of his features. [Citation.]."

■ The error, standing alone, would not justify a reversal, as the minor testified that he was "low-riding," that is, sitting low in the seat, just before defense counsel asked him to demonstrate his position. The evidence sought

to be elicited was substantially before the court by oral testimony. ██ Although the error does not require a reversal, the case must be sent back to the trial court because of error within the ambit of *In re Winship, supra,* 397 U.S. 358, which came down after this case was tried.

*Winship* requires proof beyond a reasonable doubt in juvenile cases. It is not clear from the record whether the court below followed the "preponderance-of-evidence" standard then approved by the California Supreme Court, or followed the *Winship* standard of "proof beyond a reasonable doubt."

The order is reversed with directions to the juvenile court to make new findings on the present record and such additional evidence as either party may elect to produce, and to enter an order pursuant thereto.

Gargano, J., and Ginsburg, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.